## John Hotchin and others v. Joseph K. Secor and another.

A note received for a prior demand is payment of that ·demand if such is the understanding and assent of the parties.

That such was the understanding and assent of the parties may be proved by their subsequent acts and conduct, as well as by direct proof of an express agreement. .

Where the note of two members of an association was taken for the amount of a debt against the association, and this note was afterwards paid in part by the makers, and their notes on longer time taken for the balance; and suit being brought on the original debt, the court was asked to charge the jury "that it was. not absolutely necessary to show an express agreement on the part of plaintiffs to receive the note in payment of the claim against the association; but that if the jury find, from all the circumstances of the case, and the subsequent acts of the plaintiffs in regard to said note, and in taking new notes of the makers, and extending the time of payment, they had acted and treated said notes as their own, and as received in payment of their claim, then the jury are authorized to take such facts into consideration, and find that the note was received by the plaintiffs in payment, if the evidence satisfies them that such was the fact:" *Held*, that this request presented substantially a correct view of the law, and the court erred in declining to charge accordingly.

*Heard October 4th. Decided October 11th.*

Error to St. Joseph Circuit.

Defendants in error, composing the firm of Secor, Ber- dan & Co.," brought suit in the court below, against plain- tiffs in error as persons composing the " White Pigeon Farmers and Mechanic's Mercantile Association," to recover the amount of an account for merchandise sold the Asso- ciation. The defense, among other things, was that the demand had been satisfied by the receipt, by Secor, Ber- dan & Co., of notes of May & Cloyes, two members of the Association, in payment. The testimony taken to prove this payment was as follows:

Maro Wheeler, testified: "I am in the employ of the plaintiffs, and have been for four years. I am their prin- cipal book-keeper, and have travelled some in selling goods, and collecting for them. I am acquainted with the firm of May & Cloyes — the firm was composed of William B. May, and Josiah W. Cloyes. My impression is, that

I sold the firm of May & Cloyes goods, prior to June, 1856, in behalf of Secor, Berdan, & Co. Orders which were received for goods, by Secor, Berdan & Co., were signed 'William B. May, Agent F. and M. M. A.' There was no arrangement between myself, as the agent of the plaintiffs, and William B. May, or any one else, as to how goods were to be charged when the money did not accompany the orders. I did not, in the fall of the year 1856, take the notes of May & Cloyes, or any other notes, for the debt that is now claimed of the defendants· I made no settlement at any time during the month of December, 1856, or January, or February, 1857, in behalf of the firm of Secor, Berdan & Co., with William B. May and Charles Cooper, or either of them; of my own knowledge, I know nothing of any note being sent by the plaintiffs, or either of them, to the firm of May & Cloyes, or to be returned by them to the plaintiffs, except that the amount of the goods claimed in this suit was sent by Mr. Secor to White Pigeon, and that a note signed by May & Cloyes was received in return; I learned this from Mr. Secor. The amount of said note was eight hundred and twenty - five dollars, and it was payable to the order of the plaintiffs. A portion of this note was paid, and for the balance, on the 10th day of August, 1857, I took, whilst at White Pigeon, three notes as follows: The notes were dated August 10th, 1856; one, for $203,42, payable 20 days after date, to the plaintiffs' order — signed by "May & Cloyes;" one of the same date, at 40 days, payable to same order, for $204,01, signed by "May & Cloyes;" and one of same date, at 70 days, by the same parties, and to the same order, for $405,58. The above notes are still held by the plaintiffs. I can not give the amount of the payments made on said note, nor by whom the said payments were made. I do not recollect of taking any orders myself, after December 1st, 1856. On examination of the plaintiffs' books, I find there was a bill

of eighty-eight dollars and forty-eight cents, sold to May & Cloyes by the plaintiffs, on the 26th of December, 1856. In the month of August, 1857, I made an exchange of notes with the firm of May & Cloyes, by delivering to William B. May the note of May & Cloyes, and receiving therefor the three notes described above. After the insolvency of May & Cloyes, I called on May, and asked him for payment of the notes.

"The plaintiffs, previous to the 1st of June, 1856, had had some dealings with May & Cloyes, which commenced May 12th, 1854, and continued until April, 1855. After that time, the plaintiffs sold goods to the "Farmers' and Mechanics' Mercantile Association," of White Pigeon, in which plaintiffs supposed May & Cloyes were interested; the orders were in the name of the Association — the goods were invoiced in their name, and shipped to them. The amount of goods sold to the Association as above was three thousand one hundred and seventy-six dollars, and twenty-two cents; and the amount remaining due, unpaid, is about six hundred and fifty dollars. The goods were ordered by William B. May, claiming to be the agent of the "Association." The notes taken by me, in August, 1857, were taken as an extension of the old note: the proposition was, to divide the old note into the three, as stated, at 20, 40, and 70 days, in order that they might be met more readily."

Joseph K. Secor, testified: "I am one of the parties plaintiffs: am acquainted with William B. May: have been acquainted with him some years, as the acting man of the firm of May & Cloyes, and as agent of the White Pigeon Farmers' and Mechanics' Mercantile Association; he claiming to be such agent. We did business with the firm of May & Cloyes, one or two years previous to June, 1856. I do not remember when I first received information of the revival of the firm of May & Cloyes. I find goods charged to the firm, December 26th, 1856, and presume

we had information of the revival, at that time. I find
by the books of our firm, that on the 6th of March,
1857, there was a settlement made with the White Pigeon
Farmers' and Mechanics' Mercantile Association, they be-
ing credited with bills receivable to the amount of eight
hundred and twenty-five dollars, which covers the balance
for which this suit is brought. I do not recollect who
signed said note for which credit was given. A part of
this note was paid, and for the balance, May & Cloyes
sent their note, but not under any agreement on our part
with them, in relation to it. There was no express agree-
ment on our part to take their note; but it was sent,
and retained by us; subsequently, the last mentioned note
was given up, and three taken instead, which we still
hold. I have no recollection of sending to, or receiving
any other notes from, May & Cloyes. The consideration
of any notes we have received from May & Cloyes was
goods sold to this Association; but I have no recollection
of sending any notes to them for their signatures. The
notes were given for the goods for which suit is now
brought." We still hold the three notes of May & Cloyes.
We have made efforts to collect them, and have solicited
payment of May & Cloyes of their notes: we did so
soon after they matured; endeavored to get security on
them, at that time, from them."

From the bill of exceptions it appears that defendants
insisted that this evidence was sufficient to bar the plain-
tiffs of their action. But " the said Circuit Judge did then
and there declare, and deliver his opinion to the jury
aforesaid, that the said several matters so produced and
given in evidence, on the part of the said defendants,
were not sufficient to bar the said plaintiffs of their ac-
tion aforesaid." And defendants excepted.

The counsel for defendants then requested the Circuit
Judge to charge the jury as follows:

That it was not absolutely necessary to show an ex-

press agreement on the part of the plaintiffs to receive the note of May & Cloyes, in payment of their claims against the defendants; but that if the jury find, from all the circumstances, and the subsequent acts of the plaintiffs in regard to said note, and in taking new notes of the makers, and extending the time of payment, they had acted and treated said notes as their own, and as received in payment of their claim, then the jury are authorized to take such facts into consideration, and find that the note was so received by the plaintiffs in payment — if the evidence satisfies them that such was the case.

This charge, the Circuit Judge refused to give, but did charge the jury:

"If the jury find, from the evidence, that the plaintiffs did sell and deliver goods to the defendants, as they have alleged in their declaration, and that the goods came to the possession of the defendants, and were received by them, then the defendants are liable.

"If the plaintiffs received the notes of May & Cloyes on the debt of the defendants, this will not discharge the defendants, unless the plaintiffs received the notes as payment.

"If May & Cloyes were members of the White Pigeon Farmers' and Mechanics' Mercantile Association, and were liable with the other defendants, to the plaintiffs, the taking of their notes by the plaintiffs would not discharge the other defendants, unless the plaintiffs agreed to receive the same as payment."

Defendants' counsel excepted to the whole charge, and the jury having returned a verdict for plaintiffs, defendants brought error.

*W. Saviers*, and *C. Upson*, for plaintiffs in error.

*H. H. Riley*, for defendants in error.

HOTCHIN v. SECOR.

CHRISTIANCY J.:

The main question in this case was, whether the paper of May & Cloyes was received by the plaintiffs below in payment of their claim against the defendants? That the paper must have been so received by the plaintiffs, to make it operate as such payment, was admitted by the defendants' request to charge, and it does not appear to have been a disputed question. But the real question in connection with this point was, by what kind of evidence it was competent for the defendants to show that the paper in question was so received? The defendants' counsel requested the court to charge, "that it was not absolutely necessary to show an express agreement on the part of the plaintiffs to receive the note of May & Cloyes in payment of their claims against the defendants; but that if they find, from all the circumstances of the case, and the subsequent acts of the plaintiffs in regard to said note, and in taking new notes of the makers, and extending the time of payment, they had acted and treated said notes as their own, and as received in payment of their claim, then the jury are authorized to take such facts into consideration, and find that the note was received by the plaintiffs in payment — if the evidence satisfies them that such was the fact."

This request raised the question, what kind of evidence the jury were authorized to consider as bearing upon the question of the receipt of the note in payment. And this was a very material question, in the aspect in which the case appeared upon the evidence. This charge the court refused to give; but did charge that the receipt of the note by the plaintiffs would not discharge the defendants, "unless the plaintiffs received the notes in payment;" and this is the whole of the charge in reference to the question of the reception of the notes by the plaintiffs. This charge, though correct, so far as it went, entirely evaded the question of

the kind of evidence which it was competent for the jury to consider as bearing upon the point in dispute, and left to the jury only a question about which there was no controversy.

But this charge, taken in connection with the request to charge, and the refusal of that request, necessarily, we think, left the jury to infer that it was necessary to show an *express agreement* on the part of the plaintiffs to receive the paper in payment, and that they would not be authorized to find that it was so received, from all the circumstances and the subsequent acts of the parties, referred to in the request. And they must also have inferred, that an express agreement must be shown by direct evidence.

We do not understand this to be the law. We are aware of no rule, and can discover no reason, why direct evidence of an express agreement should be required in such a case. If such was the understanding and assent of the parties, it was sufficient. And that such was the understanding of the parties, may, we think, be proved by the subsequent acts and conduct of the parties, as well as by direct proof. The weight of such evidence, is, of course, a question for the jury. We think the request of the defendants presented substantially the correct view of the law, and the court should so have charged.

The judgment must be reversed, and a new trial granted.

The other Justices concurred.