## The Au Sable River Boom Company v. William Sanborn and others.

*Payment: Debtor's acceptances: Agreement.*    The taking of the debtor's acceptances does not operate as payment of the debt in the absence of an agreement that they should be received in payment.

*Boom companies: Lien on logs: Delivery: Acceptances: Lien on residue of logs: Waiver.*    A boom company having taken time acceptances for its claim for services upon rafts of logs delivered to the owners thereof, this would give the latter the right to demand and receive the residue of their logs released from any lien for services upon the rafts delivered. There being no agreement or understanding that the logs on hand might be retained as security for the future payment of a demand not then payable, such an agreement cannot rest in implication.    And the lien being thus once lost could not be revived by the maturing of the acceptances; a lien once waived is permanently lost.

*Lien on logs retained for dues on logs delivered: Bona fide purchaser: Waiver.* Even if as between the boom company and the original log owners there could be any question that the taking of such acceptances would be a waiver of any lien therefor on the remaining logs, there could be none as between the company and a third person to whom the property has been sold without notice of any claim for services in respect to logs previously delivered.    If one by his purchase acquires an immediate right to remove his property, he cannot lose it by any subsequent default of his vendor.

*Submitted on briefs April 10.    Decided April 24.*

Error to Iosco Circuit.

*Walker & Kent,* for plaintiff in error.

There can be no doubt that the plaintiff had originally a lien upon these logs which was not lost by the surrender of a portion of them: *Comp. L. 1871,* § *2788.* The statute provides that the right to retain possession shall continue until the charges "shall be determined, satisfied and paid."

This lien was not affected by the order of Sanborn & Brother to deliver those logs to Howard & Son in pursuance of the sale. No demand for the delivery of the logs was made when the order was presented, and it was at a time of the year when such delivery would have been impracticable. A sale of logs on which plaintiff had a lien must have been subject to this lien. It must have been subject to any lien the plaintiffs had when they received notice of the sale.

The taking of negotiable paper for the amount of charges was not a waiver of the lien. It is settled in this state that the taking of such paper is not payment unless it is so agreed by the parties. It may be contended that the taking of these notes was a waiver of the lien, because time was given; but the language of the statute is express. The right to keep possession continues until the debt is "satisfied and paid." It is important to notice that the lien in this case is statutory, and must depend upon the words of the statute for its extent. Unless the giving of time is payment, the lien is not lost by giving time.

The discounting of one of the notes was not a waiver of the lien as to this note. The plaintiff, by its indorsement, remained liable on the note. The case does not expressly show that this note had been taken up by plaintiff, but both notes were produced by plaintiff on the trial. At any rate, it appears that neither note has been paid, in whole or in part, and hence the lien has not been discharged or waived as to either note.

The fair inference from the facts found is, that neither party had any thought that the lien of plaintiff on the logs undelivered was in any way lost. These logs did not come down, and in all probability were not expected to come down until the winter season began, and prevented the possibility of their being delivered until long after both notes became due. There was, therefore, no reason why Sanborn & Bro. should have asked for a release of the lien if they expected to pay their notes; and probably one great reason why the company released a part of the logs was that they thought they had an abundance of security in the logs still retained.

There are a great many authorities upon the subject of

liens and their waiver, both at common law and under stat-
utes.   They are partly collected in *2 Parsons on Notes & Bills*,
*175 et seq., and 164 et seq.*   The conflict in the decisions is
considerable.   It does not seem to us that a discussion of
these cases will throw much light on a question like that under
consideration, which must be determined by the interpreta-
tion of the language of a special statute.

*Brown & Farrand*, for defendants in error.

The facts agreed upon furnish no ground whatever for a
recovery for any services rendered upon or about the logs
seized.   If, therefore, the plaintiff had any right to retain
them it was to enable it to secure payment of the two accept-
ances which it received from William Sanborn & Brother.

In *Danforth v. Pratt, 42 Me., 50*, it was held a lien may be
waived or lost by voluntarily parting with the possession of
the goods.   So in the case of *King v. Indian Orchard Canal Co.,
11 Cush., 231.*

In *Hutchins v. Olcutt, 4 Vt., 549*, it was held that when labor
is bestowed on articles under an agreement to receive a note
in payment, the lien on them is waived; and when there was
no such antecedent agreement the subsequent taking of a ne-
gotiable note waives the lien.   It is true that it has been held
that the mere taking of a note without releasing possession
of the property is not necessarily a waiver, but that the taking
of a note and releasing possession does operate as a waiver.

Where the possession of the property is surrendered, this
shows an intention to extinguish the lien: *Lewis v. Starke, 18
Miss., 120; Butts v. Cuthbertson, 6 Ga., 166; Muir v. Cross, 10
B. Mon., 277; Succession of Kercheval, 14 La. Ann., 457; Clark
v. Draper, 19 N. H., 419.*

We are aware that it has been held that the delivery of a
portion of the goods held by a warehouseman, when no note
is taken therefor, does not operate to prevent such warehouse-
man from asserting a lien upon that portion of the goods
retained by him to satisfy his charges on the whole.

This seems to be the farthest that any case goes toward
modifying the rule as laid down by *Paley* and *Chitty*, "that a
particular lien is the right to retain a thing for some charge
growing out of that identical thing."   In *6 East, 622, Chief
Justice Kenyon* held that the master and owner of a ship in
which a quantity of tar was imported, had, after delivering
one-half of it, a lien upon the remainder for the freight of the
whole, yet he doubted whether this would not be otherwise
if the tar had been sold to different persons by the shipper

In *The Bolivar*, *Olcott Adm.*, *474*, it was held that a lien will not be upheld in prejudice of an innocent purchaser in favor of a party who seeks to enforce it inequitably. In *Loring v. Flora*, *24 Ark.*, *15*, it is held, with reference to statutory liens, that if before the lien becomes duly fixed as prescribed by law, another person obtains title to the property, the lien is thereby defeated as to that particular property. Howard & Son were innocent purchasers, and had no reason to believe that any lien would be asserted upon the logs in question except for services performed upon the same. At the time of the purchase nothing was due the plaintiff from Sanborns.

In *Rose v. Gray*, *40 Ga.*, *156*, it was held that a lien was not good as against a purchaser without notice. In this case there was not even constructive notice to the Howards of any claim whatever on the part of the plaintiff, and even as to the logs in question, no part of them was in the plaintiff's booms at the time Howard & Son purchased them. And though they were within the so called boom limits, it does not appear that the plaintiff had performed any labor upon them whatever. Again, the acceptances operated to transfer the promise of the drawees or acceptors from the drawer to the payee. It is not pretended but that the party discounting the acceptance has a right of action against Sanborn & Bro. Nor can the fact that the plaintiff may, under our statute, be joined as a defendant with Sanborn & Bro., in an action by the payee upon the acceptances, make any difference. Before the plaintiff can have a right of action upon these acceptances, Sanborn & Bro. must in some way be discharged from any liability to the payees.

COOLEY, CH. J:

This case comes before us upon a finding of facts, of which the following are the material portions:

"During the years 1874 and 1875 William Sanborn and James M. Sanborn were engaged in lumbering business, as partners, under the firm name of Wm. Sanborn & Brother.

"During the years of 1874 and 1875 the plaintiff rafted a quantity of pine logs and timber for said Sanborn & Bro., delivering different rafts to different tugs for them.

"On the 21st day of August, 1875, the plaintiff left in tow of the tug Wilcox, for said Sanborns, a raft which the plaintiff had rafted for them, and received their acceptance

36 MICH.—46.

therefor, payable in sixty days, which, with interest included therein for sixty-three days, amounted to eight hundred and forty dollars and forty-seven cents, which the plaintiff procured to be discounted on endorsing the same.

"On the 5th day of October, 1875, the plaintiff left in tow of the tug Livingstone, for said Sanborns, a raft of logs which the plaintiff had rafted for them, and received their acceptance for such rafting for the sum of eleven hundred and ninety-six dollars and ninety-two cents, due in ninety days, which acceptance included interest for ninety-three days at ten per cent. These logs were rafted at the request of Sanborn Brothers.

"January 6th plaintiff received an order from Sanborn Brothers, dated September 20, 1875, directing the plaintiff to deliver all of their, Sanborn's, logs and timber in the Au Sable river to Howard & Son, meaning John Howard and Henry Howard.

"During the seasons of 1874 and 1875 the plaintiff received within their boom limits in the Au Sable river, six hundred thousand feet of pine logs, being the same logs described in the petition filed at the commencement of proceedings, and a portion of the same lot of logs from which the rafts were made and acceptances given. These logs were transferred from the boom limits, so called, into the booms of the plaintiff, or most of them, between the first of October, 1875, and the first of December, 1875. The boom limits referred to embrace all of the Au Sable river above the plaintiff's boom for a distance of thirty miles, and in which the plaintiff receives logs and runs them to their booms. Said logs were purchased by Howard & Son, September 20, 1875.

"No part of the two acceptances hereinbefore mentioned and described, or either of them, has been paid, and there is now due thereon, exclusive of interest, the sum of two thousand and thirty-seven dollars and thirty-nine cents, as set forth in the plaintiff's petition.

"No demand has been made upon Howard & Son, nor

upon any other person or persons, for any charges, either for running, sorting, booming, rafting, care and storage of said six hundred thousand feet of logs and timber, or any part or portion thereof.

"The usual custom of the plaintiff is to require payment for the running, sorting, booming, rafting, care and storage of logs and timber, on delivery of the same to the owner, but in consenting to take the acceptances of Sanborn & Brother as aforesaid, the same was at their special request, and as an accommodation to them.

"Immediately upon receipt of an order from Messrs. Sanborn & Brother to deliver the logs and timber to Messrs. Howard. & Son, they were notified (between the 10th and the 15th of January, 1876), by letter, that plaintiff held the said logs and timber for an account due from Messrs. Sanborn & Brother of two thousand and thirty-seven dollars and thirty-nine cents, and claimed a lien thereon for the satisfaction of the same, but no legal proceedings were taken in the matter until the filing of the petition in this cause."

Upon these facts the circuit judge gave judgment against the lien.    In this we think there was no error.

The taking of the acceptances, according to the well settled doctrine in this state, was not payment of the demand in the absence of evidence of an agreement that they should be received in payment.—*Gardner v. Gorham, 1 Doug. Mich., 507; Hotchin v. Secor, 8 Mich., 494.* There is no evidence of such an agreement here.    It does appear, however, that the acceptances taken were payable at a future day, and we understand from the finding that they covered the whole amount then due.    As no agreement to the contrary is shown, the owners of the logs must have had the right to demand and receive them at any time, subject to the payment only of any sum then due; for we cannot imply an understanding that the logs on hand should be retained as security for the payment at a future time of a sum not presently payable.    The owners of the logs, therefore, must have had a right to remove them after the

:acceptances were given; and if so, there could have been no lien, and a lien once lost could not be revived by the maturing of the acceptances. If once waived it is permanently lost.—*Cowell v. Simpson, 16 Ves., 275; Hewison v. Guthrie, 2 Bing. N. C., 755.* If there could be any question of this as between the boom company and the original owners, there could be none as between the company and a third person to whom the property is sold without notice of any claim for services in respect to logs previously delivered. If one by his purchase acquires an immediate right to remove his property, he cannot lose it by any subsequent default of his vendor.

The Howards made their purchase September 20, 1875. One of the acceptances was then out; the other was taken before the boom company was notified of the purchase. While the boom company were justified in continuing to deliver to the Sanborns until they were informed that they had parted with their interest, it does not follow that as against purchasers they could retain a lien for services on logs actually delivered. Purchasers would have no implied notice of such a lien, and if informed that one had existed, but that the logs had been delivered on receiving negotiable paper for the amount, would have had a right to suppose the paper was received in payment.

The judgment must be affirmed, with costs.

The other Justices concurred.