Bissell, J.,
delivered the opinion of the court.
If this suit concerned only Mrs. Harrington and Mrs. Johnson, the case would be relieved of all difficulty. The circumstances attending the execution of the trust deed and the time of its delivery, the manner of the sale of the note and the evidence of Harrington all confirm us in the conviction that it was the outcome- of a deliberate, cruel, and extremely reprehensible proceeding- on Harrington’s part to defraud his wife and children out of any possible support from the avails of his property. We do not believe the *485 deed or the note were ever executed or delivered when he states they were, nor that they were received by Mrs. Johnson at the time of their execution, nor until very shortly before the date when the note was sold to Hoblit. While there is no direct evidence on the subject, the character of the instrument, the amount for which the note was drawn, the fact of its sale shortly after the rendition of the decree of divorce, convince us it was a fraudulent transaction between Harrington and his sister, carried on for the sole purpose of putting the property out of the reach of the judgment which Mrs. Harrington had obtained. ‘There would be no difficulty whatever in holding the transfer fraudulent as against Mrs. Johnson for several well settled and established reasons. The note and trust deed were given for more than the sum due. Harrington did not owe Mrs. Johnson §1,428, and whether he owed any sum or not may be questioned. At all events, the debt was reduced by the McConnell note of §500. This note was paid by McConnell. Harrington did not owe this money. He was under no obligations to give any note for it, or to execute a trust deed to secure it. We quite agree with the court that the note and trust deed were not given in payment nor as security, and, being for more than the sum due, the conveyance is fraudulent, and may be, on the application of a creditor, set aside or subordinated to his lien. Under the authorities, Mrs. Harrington undoubtedly occupies the position of a creditor, with the right to attack a fraudulent conveyance as being against her interests. She was probably a creditor at the time the note and mortgage were delivered. The trust -deed and note were executed with the intent to defraud her who was likely to become a creditor by virtue of a decree for alimony. The decree and the nature of the judgment are such as to put her legally in a position to maintain a suit to effectuate her decree as against this fraudulent transfer. On this point the better authorities all agree, and both propositions may be deemed established by a well considered line of cases. Gregory v. Filbeck, 12 Colo. 379; *486 Mitchell et al. v. Sawyer et al., 115 Ill. 650; Morrison v. Morrison et al., 49 N. H. 69; Bouslough v. Bouslough, 68 Pa. State, 495; Turner v. Turner, 44 Ala. 437; Dugan v. Trisler et al., 69 Ind. 553; Bailey v. Bailey, 61 Me. 361; Hinds et al. v. Hinds, 80 Ala. 225; Burrows v. Purple, 107 Mass. 428.
Evidently we would have no difficulty to adjudge the transfer fraudulent and subrogate Mrs. Johnson’s claim under the trust deed to the lien of the judgment for alimony. The difficulty in the case springs from the transfer of the note to Hoblit. This transaction is not free from suspicion and it is to be regretted that both Ploblit and Mrs. Johnson were not subjected to a searching cross-examination as to the history of the transaction. The evidence is neither clear nor satisfactory to the point that Hoblit was the purchaser of that note in good faith for a valuable consideration. An absolute payment of the price agreed on at the time of the transfer is undoubtedly essential to Hoblit’s title. The case comes here in a somewhat peculiar form. It was tried to the court, and, on the conclusion of the case, the court rendered a written opinion announcing its conclusions. There were no specific findings of fact and conclusions of law. In thé prior case of Harrington v. Hall, we were requested by counsel to weigh and sift the evidence and determine for ourselves what the facts were, deciding it upon the record uninfluenced by the apparent opinion of the court. We did not in that ease, nor do we in this, declare it to be the rule that where cases are tried partly on oral testimony and partly on deposition, the court is free to pursue this course unhampered by the conclusions of the trial court. Probably, if the evidence in the record was direct, certain, definite and unmistakable on the point under consideration, and the court had on the testimony distinctly found Hoblit to be a purchaser of the note for a valuable consideration, we should have accepted this conclusion. It is otherwise. To quote the language of the learned judge: “ I think the evidence shows that Hoblit purchased the note without notice of the fraudulent transaction as be *487 tween Harrington and Mrs. Johnson. I think the giving of a check by Hoblit for the purchase money is sufficient to constitute a payment for the purposes of this action.” This is quoted because the decision is put on this point. Is is universally true that an assignee of a promissory note under-due takes it free and clear of equities. It would be useless to support this rule by the citation of authorities. If, then, Hoblit took this note before it became due and paid value for it, he took it clear of all the equities which might be asserted either by Mrs. Harrington, George Harrington, or Mrs. Johnson. His title would, be unquestionable. Manifestly, the rights of Hoblit must be determined by the character of his purchase. There is no direct finding that Hoblit paid the cash on the purchase, or that he paid it otherwise than by a check on the bank of which he was cashier, which was given to Mrs. J ohnson when the note was assigned. We are quite of the opinion the court assumed the giving of the check to be sufficient evidence of payment, leaving it to the plaintiff to attack the transaction by competent evidence if she were able. In this respect we think the trial court misconceived the law with respect to payments by check. According to Hoblit’s deposition, when he was asked in what form he paid Mrs. Johnson for the note, he stated that he gave her a check for it. He is entirely silent as to what became of the check, whether it was ultimately paid, or whether, in point of fact, Mrs. Johnson ever received the money which it represented. It is quite true, in the course of his deposition, he states he neither directly nor indirectly made any agreement with Mrs. Johnson regarding it. In the purchase he relied partly on the security furnished by the trust deed and partly on Mrs. Johnson’s individual responsibility. Both considerations entered into the transaction: If his general language respecting the purchase could be taken as expressive of the exact facts, there would be no difficulty in holding he bought the paper for a valuable consideration. His statement that he gave her a check destroys the value and force of his general evidence. The court seems to have pro *488 ceeded on the hypothesis that the burden of proving the facts respecting the purchase was with Mrs. Harrington and not with Hoblit. This does not harmonize with our views of the case as it stood when this point became important. It will be observed the transaction between George Harrington and Mrs. Johnson was fraudulent and void, and Mrs. Johnson’s lien, if she had one, was subordinate to Mrs. Harrington’s judgment for alimony. When it was once established the original transaction was fraudulent, there was no escape from the conclusion that the payee acquired no rights or equities superior to the plaintiff’s lign.
The only way by which it could be then avoided was by the production of proof by the holder of the note that he became a purchaser for a valuable consideration, jraid before the maturity of the paper. The burden was on him to establish this proposition, because, at the time he entered into the litigation, speaking of it in a technical way, the case was ripe for a decree subordinating the lien of the trust deed to that which had been obtained by Mrs. Harrington. To overcome this case, Hoblit must establish that he bought the paper. This duty was not performed by the naked declaration that he purchased the note and paid 11,423 for it, when the force and effect of this testimony is eliminated by his own evidence that he gave a check for the note, and neither produced the check and proved its payment, nor offered any evidence to bring the case within the very well established rule respecting payments by cheek. As will be hereafter shown, there is no presumption of payment arising from the delivery of a check. The payment must be established by independent testimony, unless there be something tending to show an agreement that the check was accepted as payment. The case is silent on this subject. Mrs. Johnson never agreed to take the check in satisfaction, and, if it was not paid, Hoblit did not become a bona fide purchaser for value, nor did he thereby overthrow the case which Mrs. Harrington had made out. Since the burden was on him, he was bound to sustain it. He cannot complain if he is harmed by his neglect. He knew his rights and the condition under which they could *489 be enforced, and, being a cashier of a bank and a dealer in commercial paper, he must have had a very keen sense of what he was compelled to prove to establish, a purchase in good faith. It may seem a little severe to reverse a case on a simple proposition so easily settled, but we are quite agreed that the ultimate defeat of this trust deed, if it can be accomplished without doing violence to any legal proposition, will do substantial justice between the original parties. Unless innocent third persons are involved, we should not hesitate to bring about this result. The court is agreed as to this proposition, and unless Hoblit brings himself clearly within these lines he cannot assert the rights which belong to the purchaser of commercial paper. It may be stated, as a general proposition, with regard to which there is very little division among the authorities, that the acceptance of a check raises no presumption that it is taken in payment. It is only regarded as a payment in case it is ultimately paid. The giving of a check does not operate to pay nor to extinguish a debt in the absence of a specific agreement to that end. It is only a means of payment, and unless a loss is sustained by the drawer in consequence of the laches of the holder, the debt will not be discharged, and then only in proportion to the loss sustained. If the check is not paid, the creditor may sue on the original debt, and the check will not be evidence of the payment, unless there be distinct proof that it was actually cashed or some evidence which shows a loss has fallen on the drawer. This rule respecting presumption from the giving of a check has been recognized in this state in an opinion delivered by the present learned chief justice of the supreme court. Larsen v. Breene et al., 12 Colo. 480; Blair et al. v. Wilson, 28 Gratt. 165; Heartt v. Rhodes, 66 Ill. 351; Davison et al. v. City Bank, 57 N. Y. 81; The Au Sable River Boom Co. v. Sanborn, 36 Mich. 358; Edwards on Bills, vol. 2, sec. 748, et seq.; Randolph on Commercial Paper, vol. 3, sec. 1555; Daniel on Negotiable Instruments (4th ed.), vol. 2, sec. 1623.
Such being the rule of presumptions when payments are made by check, we must conclude there was no sufficient *490 proof that Hoblit became a purchaser for value before maturity. This he must establish in order to assert the lien of the trust deed.
We clearly recognize the importance and significance of another question which has been very elaborately argued and on which, if the court was in unison and free from doubt, it would express an opinion, that there might be an end of the litigation. There is some doubt respecting the right of the appellee to enforce the lien of the trust deed as against the lien Mrs. Harrington obtained by filing her judgment in the county clerk and recorder’s. office prior to the time the note was transferred to Hoblit. We prefer to leave this question open. The error which has been discussed is clearly one on which the case must be reversed, and the court prefers to rest its decision on this conclusion, respecting which there is no controversy. There is undoubtedly a line of authorities which hold the note to be the principal thing and the security an accessory, and that the rights of the holder of the paper determine his title to the security. Some cases incline to the view that Hoblit would take the trust deed as he took the note, — free from all claims, and as of the date when the deed was filed for record. There is another line where the decisions have been rendered in litigations over the transfer of bonds which have been secured by mortgages which are nonnegotiable, wherein the reasoning would seem to suggest that a party who had acquired an intervening right, of which the purchaser had notice, might assert it against the assignee of the security. As suggested, this question is not free from difficulty, and the reversal is therefore rested on a proposition which must determine the appeal, though we thereby leave one matter open which may compel further litigation. The result is unavoidable, but since the case may possibly be very much varied by subsequent proof, we deem ourselves entirely justified in pursuing this course.
For the reasons suggested, the judgment will be reversed and remanded for a new trial in conformity with this opinion.

Reversed.