#### OF THE

## STATE OF MICHIGAN,

### In July Term, 1844.

#### PRESENT:

HON. EPAPHRODITUS RANSOM, Chief Justice,
HON. CHARLES W. WHIPPLE, ⎫
HON. ALPHEUS FELCH, ⎬ Justices.
HON. DANIEL GOODWIN, ⎭

===============

GARDNER *v.* GORHAM AND ANOTHER.

Douglass.
1d507
110 126
1d507;
116 254
1d 507
142 ¹ 91

The giving a promissory note or other security for goods sold, is no payment, unless it is specially agreed to be so taken.

Assumpsit for goods sold. Plea, general issue. On the trial, the plaintiff offered evidence showing that he sold goods to the defendants for a stipulated price, and received therefor certain securities, executed by third persons; that he collected one of the securities, but that the other was worthless, and he afterwards offered to return it to the defendants. In connexion with this, he also offered other evidence, from which it was doubtful whether it was agreed between the parties that the securities should be received in payment, or not. The Court having rejected the evidence, *it was held*, on error, that if there was no agreement between the parties, that the securities should be received in payment, the evidence offered would have entitled the plaintiff to a verdict; that whether there was such an agreement or not, was a question for the jury; and, as it might have been inferred from the evidence offered, that there was none, its rejection was erroneous.

*Held*, further, that it was not necessary for the plaintiff to declare specially in such a case.

ERROR to Calhoun Circuit Court. Gardner sued Gorham and another in assumpsit. The declaration contained

a count for goods sold and delivered, and also the common money counts. The plea was the general issue.

The bill of exceptions states that on the trial of the cause, the plaintiff offered to prove " that, some time in the fall of 1838, he sold the defendants a quantity of cloths and flannels, amounting to $700 and upwards, and received *in payment therefor* a bond and mortgage executed by one Prindle, for about $300 and interest; and a note and mortgage for about $400, executed by one Platt, to one Gale, and assigned to the defendants; that, at the time of the *sale* and delivery of the said *notes* (?) and mortgages, *by the plaintiff to the defendants,* (?) the plaintiff told the defendants that, if he took them in payment, it would be upon their representations, which were that the securities were good, and well secured on good property; to which the defendants replied, that it was all right, and if it was not, they should feel bound to make it so; that they refused to guaranty the payment of the securities; that, in fact, the note and mortgage executed by Platt, were worthless, and of no value, which was known to the defendants. The plaintiff further offered to prove that he kept the bond and mortgage executed by Prindle, which was good, and had in part collected the amount due thereon; and that he offered to return to the defendants the note and mortgage executed by Platt." The counsel for the defendants objected to the introduction of this testimony. The Court sustained the objection and rejected the evidence. To which decision the plaintiff"s counsel excepted; and, having been compelled to submit to a nonsuit, removed the cause into this Court by writ of error.

*Woodruff*, for the plaintiff.

*Pratt & Crary*, for the defendants.

Gardner *v.* Gorham.

WHIPPLE, J. delivered the opinion of the Court.

[After some remarks upon the loose and inartificial manner in which the bill of exceptions states what facts the plaintiff offered to prove, and the consequent difficulty in ascertaining therefrom with certainty, what these facts were, the opinion proceeds:]

The facts offered to be proved by the plaintiff on the trial below, were probably as follows: That, some time in the fall of the year 1838, the plaintiff sold to the defendants domestic cloths and flannels, at a stipulated price, and agreed to receive in payment the securities above mentioned, with the understanding that certain representations made by the defendants, that the securities were good, and well secured on good property, should prove correct.

Upon the argument of the cause it was urged that the testimony was inadmissible, on the ground that, if the representations respecting the character of the securities were false, it was the duty of the plaintiff to rescind the contract, which was entire, by returning to the defendants *all* the securities received, and then resort to his appropriate remedy to recover the goods in specie, or their value; but that the plaintiff having retained the bond and mortgage of Prindle, upon which a partial payment had been made, and which was esteemed good and available, he could not, by an offer to return the note and mortgage executed by Platt, recover the difference between the price agreed to be paid for the goods, and the amount specified in the bond. No rule is better established, than that a party upon whom a fraud has been practised in making an agreement, has the right to rescind that agreement upon discovering the fraud; but, to render such an act effectual, he must avail himself of the earliest opportunity after the fraud is discovered, to put the opposite party in the same position he occupied when the fraudu-

lent agreement was entered into. Thus, if property has been received, it would be his duty to return it, with notice of his intention to rescind the contract; for, if he retains the property, or does any other act contemplated by the agreement, after the fraud is discovered, he waives his right to rescind, and affirms the agreement. In this case, the agreement to sell the goods and receive in payment certain securities, was one transaction; and, whether it would have been admissible to have shown in the present action, and under the pleadings as they appear in the record, that there was a false representation as to one of the securities, and thus lay the foundation for a recovery, admits of much doubt; and I forbear the expression of any opinion upon that point, as it becomes unnecessary, from another view which may be taken of the case.

It is insisted that, if the securities were not received by the plaintiff absolutely as payment, it is competent for him to recover in this form of action, provided the maker of the note was insolvent, and the mortgage security proved insufficient. It is believed that no principle of law is better established, at the present day, than that the giving a promissory note for goods sold, or for any other valuable consideration, is no payment, unless it is specially agreed to be so taken; and, in this respect, it makes no difference whether the note be given for a precedent debt, or for a debt created contemporaneously with the agreement; or whether it be the note of a third person, or of the party to the agreement. The authorities in support of this rule are so numerous, and the rule itself so firmly established, that a reference to many cases is deemed unnecessary. One or two cases in England and this country will, however, be cited, that I may the more readily apply the rule to the present case. In the case of *Owenson* v. *Morse,* 7 T. R. 64, the facts were, that the plaintiff purchased of the defendant some articles of plate, and

paid the price of the plate in the notes of the Messrs. Shaws, bankers; they failed before the plate was sent home; and the defendant refused to deliver the same to the plaintiff. Upon the trial of the cause, Lord *Kenyon* said, that, " if the defendant had agreed to take the notes *as payment*, and to *run the risk* of their being paid, that would have been considered as payment, whether the notes had or had not been afterwards paid ; and that is all that is proved by the cases that have been cited ; but without such agreement, the giving of such notes is no payment."

In the case of *Johnson* v. *Weed,* 9 John. R. 310, it appears that Johnson sold the defendant goods, for which he agreed to take the note of John Townsend, which was delivered to him. Townsend failed before the note fell due, and the plaintiff brought his action against the defendant for goods sold and delivered. Chief Justice *Kent,* before whom the cause was tried, charged the jury " that, unless the plaintiff agreed to receive the note as payment, and to run the risk of its being paid, the mere taking of the note would not amount to payment, if it turned out to be of no value ; and that, whether the plaintiff did or did not take the note in question, under such an agreement, was a matter of fact for the jury to find." See also the case of *Porter* v. *Talcott,* 1 Cow. R. 359, and the cases there cited.

Applying the principles of these cases to the one at bar, I think enough appears in the bill of exceptions, to have authorized the Court below to permit the testimony offered by the plaintiff to go to the jury, whose province it would have been to determine whether it was agreed between the parties that the securities should be taken by the plaintiff as payment for the goods sold, and he should incur the risk of their being paid. It is true that the bill of exceptions states that the plaintiff sold to the defendants

a quantity of goods, *"and received in payment therefor,"* &c.; which would seem to indicate that *payment* was *absolutely* made for the goods, by the assignment of the securities, and that the plaintiff was to run the risk of their collection. But, however strong and clear the language used by the plaintiff may have been, it was, after all, a question of fact for the jury to determine, respecting the real intention of the parties; especially, as other testimony was offered tending to show that it was not contemplated by either of the parties, that the securities assigned to the plaintiff were to be received as absolute payment for the goods sold.

There is another aspect in which this case might be presented, and which would have authorized the admission of the testimony offered by the plaintiff. It is stated in the bill of exceptions, that the plaintiff offered to show that he stated to the defendants, at the time the securities were taken, that he received them upon the representations made by the defendants, that they " were good, and well secured on good property;" and that the defendants replied, that "it was all right; and, if it was not, they should feel bound to make it so." Would not a jury have been authorized, from such a statement, to infer that, in case the securities taken by the plaintiff should prove insufficient, they would make good the loss? I think such an inference clearly deducible from such a statement; and if so, the evidence should have been permitted to go to the jury.

It was unnecessary to declare specially, under any view I have been able to take of this case. The contract, on the part of the plaintiff, was completely executed, and if the securities were not received in payment, it was competent for the plaintiff to return them to the defendants, and declare generally for goods sold and delivered. At all events, if it was the understanding of the parties

that the goods were sold for a stipulated price, and the securities were not intended as payment, it was clearly competent to declare generally for goods sold and delivered; and, by showing the insolvency of the maker of the note, and the worthlessness of the property mortgaged, the plaintiff would be entitled to recover.

The judgment of the Circuit Court must, therefore, be reversed, and the cause remanded, with instructions to issue a *venire facias de novo.*

*Judgment reversed.*