## The People on the relation of the Attorney General v. The River Raisin & Lake Erie Railroad Company.

*Pleadings on information for usurping corporate powers.* — In an information in the nature of a *quo warranto*, it is not necessary to set forth the franchises and privileges alleged to be usurped, except in general terms. It is always the right of the government to call upon those who assume corporate powers, to show by what warrant they do so; and when the defendants set forth their claims by plea, the Attorney General may show by replication the special grounds he relies on.

THE PEOPLE v. RIVER RAISIN AND LAKE ERIE RAILROAD CO.

*Corporation confined to the purposes for which it was created.* — Where by its char-
ter a corporation is confined to one kind of business, it can not lawfully engage
in enterprises foreign to that business. A railroad company whose purposes
are strictly confined to the completion and maintaining of a railroad, can not
lawfully engage in banking.

*Banking powers, what are.* — The issue of paper designed to circulate, in the form
and similitude of bank bills, is an' act of banking.

*Duplicity in pleading.* — A replication which, to show that defendants usurp the
franchise of banking, avers that certificates issued by them are in the simili-
tude of bank bills, and also that they are issued with intent to be put in
circulation as money, is open to objection for duplicity.

*Immaterial issue.* — Information, calling upon defendants to show by what right
they assume to exercise banking powers. Plea, setting forth a charter of
defendants as a railroad corporation, which gave them no authority to issue
circulating notes; and stating the issue by defendants of certain certificates
which, as described, might or might not be within the statute against unlawful
banking, and then denying that defendants have exercised the franchises
charged "except as aforesaid." Held, that as the plea neither confessed nor
denied the exercise of banking powers, the issue tendered by it was imma-
terial.

*Heard April 15th and 16th. Decided May 24th.*

Information in the nature of a quo warranto. The case
was brought to a hearing on demurrer to the replication,
and the pleadings are sufficiently stated in the opinion.

*Backus & Harbaugh* and *T. Romeyn*, for defendants:

1. The plea is bad as being a departure in pleading.
The information charges solely the usurpation by the
defendants of the franchise of banking, and on that ground
alone asks judgment against them. This charge is dis-
tinctly traversed and put in issue by the plea; all the
other matters set forth in the plea are mere inducement,
and immaterial to the issue made by the traverse *of bank-
ing, or no banking, charged in the information.* This issue
by the replication is abandoned, and a new charge set up
therein; *that of an admitted corporation violating a crim-
inal law of the State by issuing bills in the similitude of
bank bills.*

2. The replication sets up three distinct and independ-
ent facts: 1st. That the evidences of debt granted to J.
Q. Adams, are in the similitude of bank bills; 2d. That

said J. Q. Adams was, at the time of granting said evidences of debt to him, president of said corporation, and said evidences of indebtedness were signed by him; and, 3d. That said evidences of debt were granted and issued to him with an intent that they should be put in circulation as money. Which of these three distinct propositions is issue to be taken upon? Which, if either, is material to the question of banking, or no banking?' The replication is manifestly bad, not only as tendering an immaterial issue, but as double and uncertain.

3. The replication is bad in substance, even were the matters therein pleaded sufficient; for want of an averment of an intent, on the part of the defendants, that the evidences of debt should be put in circulation as money.

4. The only charge in the information, and traversed by the plea, is the usurpation of banking powers.

Banking powers have been defined to consist of issuing negotiable notes, discounting notes, and receiving deposits: *People v. Utica Insurance Co.* 15 *Johns.* 390; *People v. Manhattan Co.* 9 *Wend.* 383; 2 *Cow.* 710; *Bouv. L. Dic. tit.* "*Banks and Banking.*"

All this is fully met and denied by the plea, distinctly putting in issue the charge alleged in the information.

This plea is wholly unanswered by the replication, which charges (insufficiently either for an information or plea) a new and distinct offense, created by section 5, chapter 50 of the R. S. of 1846, as amended by the S. L. of 1853,— that of issuing evidences of debt in the form and having the appearance of bank bills. The law under which this charge is made is in these words: "No person, association, or body corporate, whether public or private, except such bodies corporate as are or shall be expressly authorized by law to do a regular banking business, and to issue bank bills, shall issue any bills, notes, due - bills, drafts or other evidences of debt, in the similitude of bank bills, or to be loaned, or put in circulation as money, etc." The

replication nowhere avers either that the defendants' corporation is not expressly authorized to do a regular banking business, and issue bank bills, or that the defendants issued the bills, or evidences of debt, to be loaned or put in circulation as money. Such a charge would be bad in an indictment or information, and is equally bad in a plea: — *Koster v. The People*, 8 *Mich.* 431.

In proceedings by information of *quo warranto*, facts necessary to be alleged to show a neglect of duty, must be set out with all the exactness of ‘pleading required in an action for a penalty: — 23 *Wend.* 198 ; 23 *Wend.* 223.

Where an offense is created by statute, and there is an exception in the enacting clause, the indictment must negative the exception: — 11 *Shep.* 232.

Upon every principle, therefore, the replication is bad.

*A. Williams, Attorney General*, and *T. M. Cooley*, for the People.

1. The *plea* is bad. The denial that defendants have used the franchise of a ‘banking corporation, is coupled with an admission that, so far as issuing these certificates of indebtedness is concerned, they have done so. Issuing bills to circulate as money is the exercise of banking powers: — 2 *Cow.* 710. But such powers never having been conferred, this corporation does not possess them: — 2 *Cow.* 709; 11 *Ohio*, 1; 11 *Ohio*, 96 ; 15 *Johns.* |358. For the restraining act then in force, see *Laws of* 1833, *p.* 530, copied from *N. Y. Laws*, 1804, *p.* 615. If the plea does not assert the right of banking, to the extent of issuing these bills, the facts it sets forth are immaterial.

2. There is enough on the face of the certificates to show that they were designed to circulate as money. They are in the *form* of bank bills, signed by a *cashier*, payable to the *bearer*: — 4 *Edw.* .*Ch.* 138, 170; 9 *Paige*, 471;. 4 *Barr*, 328.

3. The replication is not double. It presents the single

THE PEOPLE *v.* RIVER RAISIN AND LAKE ERIE RAILROAD CO.

point that the notes are issued with intent to be put in circulation as money. All the facts recited bear directly upon that point. The *form* they bear is only important as characterizing the intent: —15 *Wend.* 357; 1 *Burr.* 317.

4. The intent of defendants is charged in the same manner in which the intent is always charged in criminal cases. See forms, 2 *Arch. Cr. Pr. by Wat.* 1, 5, 20, 25, 28, 33, 35, 180.

CAMPBELL J. :

The Attorney General filed an information, charging defendants with usurping the following liberties, privileges and franchises, viz: "That of becoming proprietors of a bank or fund, for the purpose of issuing notes, and transacting other business which incorporated banks may and do transact, by virtue of their respective acts of incorporation, and also that of actually issuing notes and carrying on banking operations, and other monied transactions, which are usually performed by incorporated banks, and which they alone have a right to do"; and inquiring by what warrant they claim to use those franchises, &c.

The plea sets up the charter, and avers that under it the corporation was authorized, among other things, to "grant such evidences of debt which might be incurred by said company, as may be by the by-laws thereof directed, to such an amount as should be deemed neces. sary for the transacting of the business of the same" — "Provided such by-laws should not be contrary to the constitution or laws of the United States, nor of the State of Michigan." The plea proceeds to set forth certain by-laws requiring the president to sign, and the treasurer, as cashier, to countersign, all evidences of debt; which, by the same by-laws, were required to be in the form of a promissory note, payable to bearer on demand, at the office of the company in the city of Monroe: That from time to time large liabilities were adjusted by such evidences

12 MICH.—Z.

of debt, to the amount of $200,000 : That one James Q. Adams became the owner of a large amount of these, and presented them for adjustment, and they were adjusted by issuing similar evidences for the principal and interest due him : And the plea then denies that the defendants have exercised any of the liberties, privileges or franchises, charged by the information, "*except as aforesaid*" ; and this they claim a right to do.

To this plea the Attorney General replied, that the evidences of debt granted to Adams were granted and issued to him "in the form, and having the appearance, of bank bills, in sums of one dollar, two dollars, and three dollars, [the same being printed from engraved plates of the size in which bank bills are commonly issued, and with vignettes and other devices thereon which are usually found upon bank bills;" that Adams was president, and signed the certificates of indebtedness as such, "and that the same were so granted and issued to him, with intent that they should be put in circulation as money;" &c.

To this the defendants demur; 1st, because they say the replication is a departure; the offense set up not being the same set forth in the information: 2nd, for duplicity, as charging, (1) that the evidences of debt were in the similitude of bank bills, and (2) that they were intended to circulate as money: 3rd, that it does not aver an intent in the defendants that they should be put in circulation as money; 4th, that it does not admit, deny or traverse the plea; 5th, that the plea traversed the information, and the replication does not join issue upon it.

It is very well settled that, in an information in the nature of a quo warranto, it is not necessary to set forth the franchises and privileges alleged to be usurped, except in general terms. It is always the right of the Government to call upon those who assume corporate powers, to require them to show by what warrant they do so; and when the defendants set forth their claims by plea, the

Attorney General may reply and show the special grounds he relies on:— 2 *Kyd on Corp.* 399, 403, 440; *Ang. & A. on Corp.* §§ 734, 756, 759, 760; *People v. Bank of Niagara,* 6 *Cow.* 196; *People v. Bank of Hudson,* 6 *Cow.* 217. The information in the case before us is precisely like that in *People v. Bank of Niagara,* and *People v. Utica Insurance Co.* 15 *Johns.* 358. The first question, therefore, which arises, is whether the matters set forth in the replication depart from the information, or, in other words, whether issuing notes payable to bearer on demand, intended to circulate as money, is business appropriate to incorporated banks, and not within the grants of defendants' charter.

The charter of the defendants authorized them to " grant such evidences of debt which may be incurred by said company, as may be by the by-laws thereof directed, to such an amount as shall be deemed necessary for transacting the business of the same." *Sec.* 11, *p.* 362, *Laws of* 1836. Their right to purchase, hold, sell, lease, and convey estate, either real or personal, or mixed, is expressly limited to "so far as the same may be necessary for purposes hereinafter mentioned, and no further." *Sec.* 3, *p.* 359. Those purposes are strictly confined to the completion and maintaining of a railroad. Any banking business would be foreign to such a charter; and it is difficult to conceive how evidences of debt "necessary for transacting the business of the corporation" could be made to embrace paper issued for general circulation, and payable on demand. In the absence of restriction, it is very possible that a corporation may use the same incidental means, to accomplish a given purpose, that might be used by an individual; but where it is confined to one kind of business, it can not lawfully engage in enterprises foreign to that business.

By the general laws in force at the date of this charter, it was provided that no person unauthorized by

law, should "subscribe to, or become a member of any association, institution, or company, or proprietor of any bank or fund, *for the purpose of issuing notes*, receiving deposits, making discounts, or transacting *any other business which incorporated banks may* or do transact by virtue of their respective acts of incorporation": *Laws of 1833, p.* 530. It was held in *Bristol v. Barker*, 14 *Johns.* 204, by somewhat nice verbal criticism, that an individual without partners was not liable to the penalty of this act, for doing a general banking business, of issue, discount and deposite. But in the case of *The People v. The Utica Insurance Co.* 15 *Johns.* 358, it was held that whatever might be the case as to individuals, no corporation or association could exercise these powers, without direct authority. In the case of *The Utica Insurance Co. v. Scott*, 8 *Cow.* 709, a note discounted by that company was held valid because the charter gave them express power to *loan* their funds. But the general doctrine can not, we think, be questioned; nor can a grant of a single power usually exercised by banks imply the right to any further and different banking powers. *In re. Ohio Life Insurance & Trust Co.* 9 *Ohio*, 291; *Duncan & Maryland Savings Institution*, 10 *Gill & J.* 299.

We do not deem it necessary, for the purpose of testing the sufficiency of the pleadings in substance, to examine into our subsequent penal statutes, concerning unauthorized banking; as, if the issue of this paper constituted an act of banking, it was not within the charter powers of defendants. We think the issue of paper designed to circulate in the form and similitude of bank notes is an act of banking, and is unlawful for the defendants. But it is objected that the replication is double, because it avers that the paper issued by defendants was not only in the similitude of bank notes, but was also issued with the intent that it should be put in circulation as money. Either of these allegations would be suf

ficient, under section 5899 of the Compiled Laws, to render the paper illegal, and subject the defendants to a forfeiture of their charter. It was held in *People v. Bank of Hudson*, 6 *Cow.* 217, that a replication may state a cause of forfeiture in very general terms, provided that they create but a single material issue. In the present case the facts all relate to a single alleged putting forth of illegal paper. But the only safe test of duplicity is to see whether a single issue can be made to controvert the pleading, by denying any one material fact. If defendants were to deny the similitude to bank bills, the fact that the notes were intended to circulate as money would not be affected by the denial, and would form a complete cause of action. So if the intent were denied, there would be a good cause of action upon the similitude. No single rejoinder would dispose of the whole replication. We think the replication is open to the objection of duplicity. This renders it necessary for us to examine the plea.

When called upon to show by what warrant they assume to exercise any franchises, the defendants were bound either to deny the exercise of the franchises, or to show what franchises they possess of the kind set forth in the information, and their title to them. In this case the defendants set up all their claim under their charter. This is declared to be a public law, and being so we are bound to take judicial notice of it, and to disregard all allegations in conflict with it. We are bound therefore to take notice that the charter of the defendants gives them no authority to issue any paper within the restraining acts. They have set forth in their plea that they have issued certain paper which they describe. But that paper as described may or may not be within the restraining acts. They therefore neither confess nor deny the exercise of banking powers, and the issue tendered by the plea is immaterial. Had they denied their exercise, the Attor-

ney General might have replied by averring the issue of illegal paper in such forms as he deemed proper, filing as many replications as he saw fit to raise separate grounds of complaint. Had they admitted the exercise of banking powers and set up their charter as authorizing it, if it had been a private act, issue might have had to be joined upon it, but inasmuch as it is a public act, the plea would have · been bad on demurrer. Having done neither, the plea is not issuable, and must be set aside.

An order must be entered setting aside the plea for insufficiency.

MARTIN CH. J. and CHRISTIANCY J. concurred.

MANNING J. was absent when the case was decided.