## HIRAM B. CHAPMAN v. COLBY BROTHERS & COMPANY.

*Judicial notice of foreign private charters— Waiver of contract conditions— Proof of corporate character—Powers of foreign corporations—Subscription and agreement for substituted payment—Amendment of declaration by adding special counts.*

In an action based on a contract made with a corporation chartered in another state, the court cannot take judicial notice of the laws under which the corporation was chartered, and they must be proved and its charter produced before the rights and liabilities of the parties can be determined.

Waiver of conditions of a contract is a question for the jury.

Failure to prove corporate character may be obviated by proof of dealings which recognize it, but such proof is not enough where the question is as to the existence of powers and privileges which are not necessarily implied by corporate existence but depend on the franchises actually conferred.

A foreign private corporation cannot establish a liability upon any act done by it as a consideration for a benefit to it, if it is an act which domestic corporations cannot do without authority of law (Comp. Laws § 6543) such as its removal from place to place, or the establishment of branches, or the acquisition of real estate, or going into business outside of the scope of its granted powers.

In Michigan, courts take judicial notice of all statutes, and when they know under what law a corporation exists, they know its powers and the limitations thereon; but they can know nothing of the purport of a foreign law until it is proven.

In an action based on a subscription and an agreement for a substituted payment, the transactions relating thereto and the consideration and agreements for the subscription must be construed together in determining the obligations of the respective parties.

A declaration on the common counts can be amended on a new trial by the insertion of special counts.

Error to Hillsdale.    Submitted Oct. 5.    Decided Oct. 12.

Assumpsit.    Defendant brings error.    Reversed.

*Dickerman & St. John*, for plaintiff in error, cited as to the power of a foreign corporation to hold land in Michigan: Green's Brice's Ultra Vires (2d ed.) pp. 12, 13, n; p. 729; 12 Cent. L. J. 386; *Taylor v. Phil. & Read. R. R.* 7 Fed. Rep. 395; *Thompson v. Waters* 25 Mich. 214; *University v. Detroit Young Men's Society* 12 Mich. 138; a corporation can have no legal existence out of the sovereignty which creates it: Ang. & Am. Corp. (10th ed.) § 161; *Bank of Augusta v. Earle* 13 Pet. 519; *Runyan v. Coster* 14 Pet. 129; *Ohio R. R. v. Wheeler* 1 Black 286; *Miller v. Ewer* 27 Me. 509; *McGregor v. Erie Ry.* 35 N. J. L. 115; it cannot migrate to another sovereignty so as to have a local existence therein: 1 Potter Corp. § 10; *Stevens v. Phœnix Ins. Co.* 41 N. Y. 149; *Bank of Michigan v. Niles* Walk. Ch. 99; 1 Doug. (Mich.) 402; a bank located in one county violates its charter by establishing an agency in another where it receives deposits and buys and sells exchanges: *People v. Oakland County Bank* 1 Doug. (Mich.) 282; *Att'y Gen. v. Oakland County Bank* Walk. Ch. 90; *People v. Auditor General* 17 Mich. 161; *Underwood v. Waldron* 12 Mich. 73; *Det. F. & M. Ins. Co. v. Saginaw Judge* 23 Mich. 492; *Van Etten v. Eaton* 19 Mich. 187; a subscription cannot be recovered at law where there was a condition precedent to its payment which has not been fulfilled: *Stewart v. Hamilton College* 2 Den. 403; *N. Y. Exch. Co. v. De Wolf* 31 N. Y. 273.

*J. F. Fitzsimmons, B. P. Shepard* and *Millard & Bean* for defendant in error.    An action for money had and received is equitable and can be maintained for money which

equitably belongs to the plaintiff: *Beardslee v. Horton*. 3 Mich. 560; *Atkinson v. Scott* 36 Mich. 18; and if money be paid on an executory contract which the other party refuses to perform it may be recovered back: *Graham v. Chandler* 38 Vt. 559; *Griggs v. Morgan* 9 Allen 37; *White v. Merrill* 32 Ill. 513; *Strong v. Bliss* 6 Met. 393; as it may when paid upon a consideration that has failed: *Steele v. Hobbs* 16 Ill. 59; 2 Saund. Pl. & Ev. 380; *Gillet v. Maynard* 5 Johns. 85; or when paid under a void contract: *Tucker v. Mowrey* 12 Mich. 378; one who has made a contract and had the benefit of it is estopped from denying its validity in an action founded on it: *Steam Nav. Co. v. Weed* 17 Barb. 378; a foreign corporation can buy land unless prohibited by charter: Ang. & Am. Corp. § 110; and one who has become bound to pay money to the corporation cannot refuse on the ground that it has violated its franchises: *Chester Glass Co. v. Dewey* 16 Mass. 102; *Silver Lake Bank v. North* 4 Johns. Ch. 370; *Indiana v. Woram* 6 Hill 37.

CAMPBELL, J. Defendant in error, claiming to be a Vermont private corporation, recovered judgment against Chapman in the Hillsdale circuit court for money advanced to him, and not repaid either in cash or in real estate, as it is claimed he was to repay it. The declaration described the plaintiffs below as incorporated under a statute referred to, and contained the common counts, and no special count.

The facts out of which the transaction sued on arose, so far as now material, were as follows: In October, 1871, an agreement was executed in Reading, Hillsdale county, by a number of parties, including Chapman, whereby, in consideration of an agreement by the corporation to transfer to Reading "the business now carried on by them in Vermont, with the capital now employed by them in said business in Vermont and New York city," the subscribers agreed to pay for the use and benefit of the corporation the sums respectively subscribed (Chapman's subscription being $2000), upon these conditions. Nothing was to be paid until the subscriptions reached $20,000, and then the subscribers were to choose a

committee to receive and apply the money on conditions to be agreed upon with the corporation; one of which was to be indispensable, namely, that all the subscribed fund should be invested in real estate and improvements for manufacturing purposes in Reading. Chapman had at first made his subscription payable in lands, but this not being consented to by the other subscribers, he made it payable in money. It is claimed, however, that some of these conditions were waived, and this was for the jury.

Immediately afterwards, and by a private arrangement, the corporation agreed with Chapman to advance him the money to pay his subscription as fast as called for, and to accept from him lands at prices marked on a plat of lots in an addition to Reading. The president of the company testified that he had agreed in advance to do this, and the written agreement, which was in Chapman's handwriting, was signed for the corporation by the president, and is the basis of the recovery in this case. The subscribed fund was invested by the committee in land and improvements which the corporation received the benefit of. There was a good deal of testimony in the case tending to show fraud and insolvency in the corporation, and dealings with and by various parties negativing the performance of the conditions in favor of the subscribers.

The agreement of the corporation, among other things, provided for establishing business in Reading with a fully paid up stock of $60,000, which they might increase to $100,000. There was evidence tending to show that the capital was greatly reduced if not exhausted.

The corporation furnished Chapman the amounts required to fill his subscription as called for, and he refused to convey lots for various reasons connected with outstanding equities or counter-claims, which need not be recited.

On the trial the corporation failed to prove the law under which it was incorporated, the court below ruling that it was not bound to show it. Much of the discussion rests on this omission, which we think was fatal.

If the objection rested merely on a failure to prove corporate character, it would have been obviated by the dealings of the parties recognizing it. The question was not whether it was a corporation, but whether it had certain powers and privileges which do not arise necessarily from corporate existence, but depend on the franchises bestowed on the corporation, which measure its powers. The money advanced by the corporation to Chapman was advanced to be paid into a fund of which it was to have and did have the benefit. Chapman paid it where it was authorized and expected to be paid, and derived no personal benefit by it beyond what was to be obtained from the performance by the corporation of its agreement with the subscribers. It is impossible to divest the transaction of its real character, as one wherein the consideration for Chapman's repayment of their advances was the fulfillment of their agreement on the faith of which this subscription was based. That agreement involved the power and right of a Vermont corporation to remove its corporate existence for all valuable purposes to Michigan from Vermont, and to locate its landed possessions and carry on the business for which it was created, in this State, as well as to enter into some other arrangements involved in these transactions, including some new organizations.

It therefore became necessary to know in the first place what were its corporate powers, and in the second place whether they could be transferred. For until this appeared there was no consideration for the subscription.

It is provided by our statutes that when any act is forbidden to be done by a corporation without express authority of law, and such act is done by a foreign corporation, no action can be maintained by the corporation founded upon such act, or any liability or obligation express or implied arising out of or made in consideration of such act. 2 Comp. L. § 6543.

It has been uniformly held in this State that corporations cannot remove from place to place, or establish branches for the transaction of their regular corporate business, unless

authorized by law. *People v. Oakland County Bank* 1 Doug. 282; *People v. Aud. Gen.* 17 Mich. 161; *Underwood v. Waldron* 12 Mich. 73; *Detroit F. & M. Ins. Co. v. Judge of Saginaw Circuit* 23 Mich. 492.

It is also equally well settled that the power to acquire and hold real estate is not allowed to private corporations except under prescribed conditions, and that transactions which are in violation of those conditions cannot be maintained. And in general the same principle is extended to prevent them from going into business or doing acts not fairly within the extent of their granted powers. *People v. River Raisin & Lake Erie R. R.* 12 Mich. 389; *Orr v. Lacey* 2 Doug. 230; *Bank of Michigan v. Niles* 1 Doug. 401.

It was held in *Thompson v. Waters* 25 Mich. 214, that where a foreign corporation was authorized to take lands under certain circumstances by its charter, such taking would be held valid in this State unless we had some law to the contrary. But the corporate charter is the source of all the power which the artificial person possesses, and no one can tell for what purposes or to what extent its powers exist, until that charter is shown. Under our laws the courts take judicial notice of all statutes, and when they know under what law a corporation exists they know its powers and their limitations. *People v. River Raisin & L. E. R. R. Co.* 12 Mich. 389. But where a foreign law is in question there can be nothing known of its purport until it is proved. *Kermott v. Ayer* 11 Mich. 181. The power to take lands is not the most important one involved in this case, although somewhat prominent in connection with some others.

We think that until the Vermont law or charter is produced, it is impossible for court or jury to know whether the agreements and considerations on which the rights and liabilities of the parties depend, are legally sufficient; and it was error to hold otherwise.

We have already intimated further that all the transactions between Chapman and the company in regard to the making and the substituted payment of the subscription,

and the consideration and agreements moving from the company, must be construed together in determining their respective obligations.

We do not deem it necessary to consider the questions arising on the pleadings, as the plaintiff below can amend them by inserting special counts. The important questions likely to arise come chiefly within the principles already discussed, and it would not be wise to anticipate difficulties which may never arise.

Judgment must be reversed with costs, and a new trial ordered.

The other Justices concurred