KIRKPATRICK *v* BESSALO.

1. PAYMENT—NEGOTIABLE PAPER.
    The taking of an acceptance for the price of goods sold does not, in the absence of special agreement, amount to a payment of the debt.

2. CORPORATIONS—LIABILITY OF STOCKHOLDERS FOR GOODS SOLD.
    1 How. Stat. § 3940, making each of the stockholders and directors of an incorporated co-operative association individually liable for goods sold the corporation "to the amount of his capital stock therein, and no more," imposes a liability equal to and over and above the full-paid value of the stock held.

Error to Houghton; Haire, J., presiding.    Submitted April 8, 1898.    Decided April 19, 1898.

Proceedings by Allen Kirkpatrick against Frank Bessalo under 1 How. Stat. § 4886 *et seq.*, to enforce the in

dividual liability of defendant for goods sold to a corporation in which he was a stockholder. From a judgment for plaintiff on verdict directed by the court, defendant brings error. Affirmed.

*A. T. Streeter*, for appellant.

*Dunstan & Hanchette*, for appellee.

LONG, J. The Mechanics & Miners' Co-operative Association is a corporation organized under chapter 116, 1 How. Stat., and in 1895 was doing business at Red Jacket, this State. The capital was divided into shares of the par value of $10 each. The defendant was a stockholder, owning two shares. The largest amount of stock held by any one stockholder was four shares. Section 6 of the organic act (1 How. Stat. § 3940) provides:

"Stockholders and directors shall be severally and jointly liable for all debts for labor performed for said corporation; and for all goods, wares, and merchandise sold and delivered to any such association, each of the stockholders or directors thereof shall be held liable to the amount of his capital stock therein, and no more."

Sections 4886 and 4887, 1 How. Stat., provide the manner of enforcing such liability. The plaintiff is a wholesale commission merchant, and sold and delivered goods to the association in 1894 and 1895. On June 21st he stopped selling goods to the association, and took for the balance of his account, which included goods sold and delivered from May 13th to June 14th, two acceptances, each for one-half of the amount then due, together with 8 per cent. interest, one payable in August, and one in September, of that year. Neither of these acceptances being paid, plaintiff commenced two suits in justice's court in January, 1896, against the association; and on February 7th judgments were taken for the amount of the acceptances in each case, with interest from June 21, 1895, to the time of the trials. Transcripts of these judgments were taken to the circuit court. Executions issued thereon

out of the circuit court, which were returned unsatisfied. Thereupon proceedings were taken to enforce the claims under the above statute against the stockholders. The cause was tried as against this defendant before a jury, and the court directed verdict in favor of plaintiff. Defendant brings error.

Counsel for defendant contends that there was evidence to go to the jury on several questions of fact. We find no conflict of evidence in the case. The plaintiff showed that he sold goods to the association; and it was conceded by counsel for defendant that the goods were sold to the amount of these acceptances. It was shown that these acceptances were never paid, and that the suits were brought and the judgments were obtained for the identical goods that were sold between May 13 and June 21, 1895. It is contended that the question whether the acceptances were received as payment was one of fact, and that the evidence was conflicting upon that question. There was, however, no conflict of evidence in this regard. The plaintiff testified that no talk was had that the acceptances should be treated as payment, and this was not contradicted. In *Kirkpatrick* v. *Mehalitch*, 113 Mich. 631, the same contention was made, and it was held, not only that the judgments rendered before the justice were for goods, wares, and merchandise, within the meaning of this statute, but that the taking of the acceptances did not extend the time of payment, and did not release the stockholder. That case grew out of the same judgments before the justice, and was a proceeding to enforce the payment against Mehalitch as a stockholder.

But counsel now contends that the manner of dealing between the parties must be considered as bearing upon these questions. It appears that John Phillips was the manager and purchasing agent of the association between the 1st day of January, 1895, and the following July. He was absent for a time; and E. C. McLean, the bookkeeper, acted in his stead during that time, and made the purchase of the goods in controversy. The board of

directors knew of these purchases. The matter of the sale of the goods and the giving of the acceptances was talked over by the board of directors. The board knew they were time acceptances. The goods sold to the association up to January 10, 1895, were sold on a cash basis, each invoice being settled for separately as soon as the goods were received by the association. Beginning with February, 1895, settlements were made monthly for goods sold during the month prior to the pay-day on which settlement was made. The arrangement was that the account should run from pay-day to pay-day, and, when the account had thus run a month, an acceptance was to be given for it, running from 30 to 90 days. It is claimed that it was a question for the jury to determine whether the arrangement so claimed to have been made was ever made. We find nothing in the record in any wise contradicting this claim. The fact is not in dispute that on June 21, 1895, the plaintiff stopped selling goods to the association, and that acceptances were made for the amount then remaining unpaid. That this was known to the directors is not in dispute; and it is not shown by the record that these acceptances were taken as payment. The suits upon which the judgments before the justice were rendered were brought for the goods, wares, and merchandise sold.

There is but one other question raised which we deem necessary to discuss. Counsel for defendant asked the court to charge the jury: "A stockholder can be held liable to the amount of his capital stock in the association, and no more. Therefore, if you find from the evidence that the defendant had fully paid his stock, he has no other liability, and you should find for him." This was refused. The defendant held two shares, and the court directed the jury to find for the plaintiff the sum of $20. The claim is, therefore, that, this stock having been fully paid, no further liability attached. This statute (section 6 of chapter 116) as to the liability of stockholders cannot have the interpretation contended for. The statute means that each stockholder shall be liable, after execution re-

turned unsatisfied against the association, for goods, wares, and merchandise purchased, to the amount of the capital stock held by him, and no more. Under this statute, the stockholders and directors are jointly and severally liable for all debts for labor performed for the corporation; while for debts for goods, etc., they are each liable only to the amount of the capital stock held by each. This has no reference to the moneys arising from the capital stock paid in, only as fixing the extent of the liability. The moneys paid for the stock become a portion of the corporate property, and it would be absurd to say that it was these very moneys for which each stockholder might be liable after execution returned unsatisfied against the corporation. What the statute means is that each stockholder shall be liable for goods, etc., over and above the stock held, to an amount equal thereto. This principle was settled in *Pettibone* v. *McGraw*, 6 Mich. 440, and the same reasoning applies to the present case.

We find no error in the record. The judgment must be affirmed.

The other Justices concurred.