SWAN *v.* GREGORY.

1. EVIDENCE—JUDICIAL NOTICE—FOREIGN STATUTES.
   Judicial notice will not be taken of foreign statutes.[1]

2. PAYMENT—BILLS AND NOTES—CONTRACTS.
   The giving of a promissory note for goods sold, or for any other valuable consideration, does not constitute payment, unless it is specially agreed to be so taken, and it is immaterial whether it is the note of a third person or of the party to the agreement.[2]

3. APPEAL AND ERROR—LIMITATION OF ACTIONS.
   The defense of the statute of limitations cannot be raised for the first time on appeal.

Error to Wayne; Codd, J. Submitted January 3, 1917. (Docket No. 19.) Decided March 30, 1917.

Assumpsit by William S. Swan against William B. Gregory and Benjamin S. Boyce for a balance of the purchase price of certain stock. Judgment for plaintiff. Defendants bring error. Affirmed.

*Millis, Griffin, Seely & Streeter,* for appellants.

*Anderson, Wilcox & Lacy,* for appellee.

MOORE, J. From a judgment in favor of the plaintiff the case is brought here by writ of error. In view of the assignments of error it is desirable to quote from the charge of the trial judge:

"Gentlemen of the jury: In,this cause W. F. Swan in his own behalf and as assignee of A. D. Coffin and the estate of Thomas Henish is suing W. B. Gregory

---

[1] The question of how case is determined when proper foreign law is not proved is discussed in note in 67 L. R. A. 33.

[2] The question of payment by commercial paper is taken up in extensive note in 35 L. R. A. (N. S.) 2, particularly taking notes of third party in the absence of an agreement, see p. 18 of same note.

and Benjamin S. Boyce for an amount of money claimed to be due from the defendant to himself and his assignors as a balance of a purchase price of a certain number of shares of stock, 240 shares, in the Maumee Paper Company, growing out of a transaction alleged to have been consummated on the 29th day of November, 1902, whereby the defendants Gregory and Boyce agreed to purchase from Mr. Swan those 240 shares of stock for the sum of $6,500, $2,000 was payable in cash, and the balance of $4,500, payable in three equal installments a year apart, interest on the balance when paid at 6 per cent.

"I charge you, gentlemen of the jury, with reference to the assignment, that the assignment set up from Coffin and Henish to the plaintiff, they are valid as papers in this action, even though given without consideration, and I instruct you that it is your duty to consider the assignment as valid without regard to whether it was made for the purposes of a lawsuit or not.

"Now it is plaintiff's contention that he and Mr. Coffin as representing themselves and the assignment of Thomas Henish some time prior to November, 1902, had several conferences with Mr. Boyce and afterwards with Mr. Gregory, looking to the purchase of stock of the Maumee Paper Company. These three parties at that time owned, with their wives, a number of shares. That prior thereto, at the plant of the paper company or in Detroit at the Normandie and at the office of the attorney in the Buhl Block, the deal was consummated and the $2,000 paid over, and that in addition a promise was made by the defendant to pay the balance of this money, $4,500, in three years. That they contracted also a promise secured in the form of three notes given by the Maumee Paper Company and signed by Gregory as president and Boyce as secretary and treasurer in the sum of $1,500, payable in two and three years from date, November 29, 1902, with interest at 6 per cent. Nothing was realized upon the note, and nothing has been paid upon the purchase price, $4,500, and they bring suit against the defendant to recover this amount and the interest from the last date of the payment of interest, November, 1906.

"It is the contention of the defendants, on the contrary, that at the time of this transaction all matters were closed and that the full payment of these sums as consideration for this stock was made. In other words, that they paid him $2,000 in cash, for the balance of the payments for these shares of stock gave them the notes of the paper company in the sums mentioned. In other words, that these notes were not in security for any personal promise on the part of the defendant to pay, but were given in actual payment. Now, it is well settled in this State that the giving of a promissory note for goods sold or for other valuable consideration is no payment unless it is specially agreed to be so done. In this respect, therefore, I charge you that in order for the defendant to defeat this claim they must show that the three notes were offered by the defendant and were accepted by the plaintiff as full payment for the debt primarily owing by the defendant. The giving of a note by a third person is not payment unless it is so received, and it is a question for you to determine whether they were so received. The giving of the notes themselves raises no presumption of payment unless the note—

"In other words, that is the main question of fact in this case. It is your province to determine whether or not the notes in question were given and received by the plaintiff and his associates upon the 29th day of November, or, as the testimony shows, some time thereafter, after the officers had taken their places as officers—after these gentlemen had taken their places as officers of the paper company—whether or not these notes were given and received by Mr. Swan and his associates as payments. In determining this question you have the right to take into consideration all the facts surrounding the transaction. There has been testimony on both sides of this proposition which it is your province to hear and determine. Testimony of the plaintiff as to his understanding and the testimony of the defendants as to their understanding. You will also consider the subsequent acts and actions of the parties to this proceeding in determining this question, but only in so far as it bears back to the original transaction of November. The actions of the parties thereafter having a bearing as to what was the understanding between the parties on the date,

November 29th. " If you find after taking into consideration all of the circumstances both at the time of the transaction and the testimony as to the actions of the parties thereafter, if you find after weighing the testimony that these notes were given as security, then manifestly the claim exists against the defendant for the balance of the purchase price. If you are, on the contrary, satisfied from the testimony and the actions of the parties thereafter and the payments and receipts of interest and all of the circumstances that enter into it, if you are satisfied that these notes were given as payment by the defendant to the plaintiff for the balance of the purchase price of the stock, it is your manifest duty to return a verdict of no cause of action in favor of the defendant. The mere fact the notes were not paid or that the Maumee Paper Company went into insolvency and nothing was realized, does not give the plaintiffs the right to change their remedy and proceed against these defendants in a personal way. If you find that they received on the 20th of November, 1902, or shortly thereafter, these notes in payment of the balance due, the fact that nothing was realized does not change the status of the parties in any respect whatsoever. The present condition of the claims of these parties in the bankruptcy court or at the time of the proceedings against the paper company does not preclude them from bringing this action, if you find, as I said before, that these notes were not received in payment, but were received as security. In other words, it was their manifest duty if these notes were security to attempt to realize all they could out of the notes and apply it upon the balance due upon the purchase price. If you believe from the testimony that the plaintiff accepted the notes in question as payment for the balance of the purchase price of the Maumee Paper Company as claimed by the defendant, your verdict must be for the defendant no cause of action.

"And I charge you that in order to prove that the notes were accepted as payment, the circumstances surrounding the giving and receiving of the notes and actions of both parties at the time the notes were received and after that time may be taken into consideration. And if you find from the testimony that the plaintiff's and his assignors' actions at the time

the notes were given and since that time was such as to lead you to believe that he accepted the notes as payment and intended to look to the Maumee Paper Company as the statutory liability of the stockholders of that company under the laws of the State of Ohio in enforcing his claim, your verdict must be for the defendant."

The charge is much longer than what we have quoted, and restates the above propositions.

The first assignment of error is that the judge erred in what he said about the sufficiency of the Henish assignment, it being claimed that, under the laws of Ohio, the administrator must be authorized to do so by the court before he can make the assignment. There are several answers to this contention.

The laws of Ohio were not introduced in evidence. We do not take judicial notice of foreign statutes. *Chapman* v. *Colby Bros. & Co.,* 47 Mich. 46 (10 N. W. 74). The assignment was executed in Georgia. There is nothing to show where the estate of Mr. Henish was in process of administration. See *Briscoe* v. *Eckley,* 35 Mich. 112. There are many assignments of error relating to the admission and exclusion of testimony. They have been examined with care, but we do not think it necessary to discuss them further than to say they are not well taken.

The important question in this case is presented by the following excerpts from the brief of counsel:

"A discussion of the contract proven by the plaintiff in this case involves the precise question of the effect of the seller of personal property accepting from the purchaser, at the time he makes his sale, for part of the purchase price, the note of a third person unindorsed by the purchaser, with full knowledge that it is not the note of the purchaser and is not indorsed by him; and also when there is a complete absence of any statement by either of the parties to the transaction at the time the sale is negotiated and consummated as to whether the note is offered and accepted

as payment for the balance of the purchase price or as security only.

"Appellants concede that some text-writers and many courts have stated a general rule of law as follows: 'That the giving of a promissory note for goods sold, or for any other valuable consideration, is no payment unless it is agreed to be so taken.' * * * It is the contention of appellants that the rule or principle of law is now established by the great weight of authority that where the note is the note of a third person and not of the debtor, and the debtor neglects or refuses to indorse it, and it is accepted for a contemporaneous obligation, the presumption is that such a note is taken as payment, and not as security."

Many authorities are cited. They are from text-books, and from courts of other States.

The question involved here came up very early in this State. In a case where goods were sold and the note of a third party was received by the seller, the court said:

"It is believed that no principle of law is better established, at the present day, than that the giving a promissory note for goods sold, or for any other valuable consideration, is no payment unless it is specially agreed to be so taken; and, in this respect, it makes no difference whether the note be given for a precedent debt, or for a debt created contemporaneously with the agreement; or whether it be the note of a third party, or of the party to the agreement. The authorities in support of this rule are so numerous, and the rule itself so firmly established, that a reference to the many cases is deemed unnecessary." *Gardner* v. *Gorham,* 1 Doug. 507.

See, also, *Hotchin* v. *Secor,* 8 Mich. 494; *Dudgeon* v. *Haggart,* 17 Mich. 273; *Burrows* v. *Bangs,* 34 Mich. 304.

In *Au Sable River Boom Co.* v. *Sanborn,* 36 Mich. 358, Justice COOLEY, speaking for the court, said:

"The taking of the acceptances, according to the well-settled doctrine in this State, was not payment of

the demand in the absence of evidence of an agreement that they should be received in payment. *Gardner* v. *Gorham,* 1 Doug. 507; *Hotchin* v. *Secor,* 8 Mich. 494."

It is argued with much emphasis that the court was wrong when it said:

"Now it is well settled in this State that the giving of a promissory note for goods sold or for other valuable consideration is no payment unless it is specially agreed to be so done."

We quote from the brief:

"The trouble with the charge is that it first tells the jury that the taking of a note in this State is no payment unless *specially agreed,* and then the jury can take into consideration facts and circumstances surrounding the transaction, the acts of the parties at the time and afterwards, in so far as those facts and circumstances bore back upon the transaction in determining whether or not there was a special agreement to take the notes as payment. This amounts to an anomaly, because if there was an implied agreement there could not be a special agreement, and nowhere in the court's charge do we find a statement to the jury that they can consider alone the facts and circumstances surrounding the transaction and the acts of the parties at the time and afterward in determining whether or not the notes were taken as payment."

Among the cases cited is *Whitbeck* v. *Van Ness,* 11 Johns. (N. Y.) 409 (3 Am. Dec. 383), which counsel call a leading case; but we think a reading of it shows it distinguishable from the instant case. See *Breitung* v. *Lindauer,* 37 Mich., at page 221. In *Sarmiento* v. *The Catherine C.,* 110 Mich. 120 (67 N. W. 1085), Justice Long, speaking for the court, said:

"A note cannot be regarded as payment unless specially agreed to be so taken. Here was an amount due for labor and materials upon the Catherine C., as well as upon the Davis boat. The amount due upon each contract was certain and specific, and the mere fact

that it was all included in one note cannot be regarded as payment, as there is no fact or circumstance which shows that it was the intent of the parties to treat this note as payment. The authorities are agreed that a note is not payment unless such was the intention of the parties. *Gardner* v. *Gorham,* 1 Doug. 507; *Jennison* v. *Parker,* 7 Mich. 365; *Dudgeon* v. *Haggart,* 17 Mich. 273."

In *Kirkpatrick* v. *Mehalitch,* 113 Mich. 631 (71 N. W. 1077), Justice HOOKER, speaking for the court, said:

"The important questions upon the record are two: (1) Were the judgments for goods, wares, and merchandise? The defendant contends that they were not. (2) Did the taking of acceptances extend the time for the payment, and release the stockholder? The defendant maintains that it had this effect. There can be no doubt that the obligation was incurred upon the purchase of goods, wares and merchandise. It is contended that the judgment was upon an acceptance, and therefore not 'a judgment for goods, wares, and merchandise,' within the statute—insisting upon a strict and literal interpretation of the statute. The price of these articles was determined by a contract, as were also the terms of payment. The acceptances should not be considered any more than evidence of the obligation. There is nothing to indicate that they were designed as payment, or that the original demand was lessened in any degree by them. We think that the circuit court erroneously held that a judgment based upon these acceptances, and showing that they were given for goods, wares, and merchandise, was not a judgment for goods, wares, and merchandise."

See, also, *Kirkpatrick* v. *Bessalo,* 116 Mich. 657 (74 N. W. 1042).

In *Delaney Forge, etc., Co.* v. *Winnebago,* 142 Mich. 84 (105 N. W. 527, 113 Am. St. Rep. 566), Justice McALVAY, speaking for the court, said:

"It is well settled that the giving of a promissory note is no payment of an indebtedness unless it is agreed that it is so accepted, and the evidence to es-

tablish payment must be positive and satisfactory. The facts with reference to the taking of the note in this case do not show any such agreement or understanding between the parties. The acceptance of the note was, therefore, not a payment of the claim. *Gardner* v. *Gorham*, 1 Doug. 507; *Peter* v. *Beverly*, 10 Pet. 568; *Sarmiento* v. *The Catherine C.*, 110 Mich. 120 (67 N. W. 1085)."

Two exhibits in the case are illuminating. They read:

"Exhibit E.
"Memorandum to Whom Stock was to be Issued.

| | |
|---|---|
| Paul Voorheis ............................. | 1 share |
| C. E. Gregory ............................. | 1 " |
| B. D. Boyce ............................... | 1 " |
| W. B. Gregory ............................ | 119 " |
| B. S. Boyce .............................. | 118 " |

240 shares.

"Transferred Nov. 29/02."

"Exhibit F.
"DETROIT, MICH., Nov. 29, 1902.
"Whereas, William B. Gregory, Benjamin S. Boyce, Carrie E. Gregory, Bertha Day Boyce and Paul Voorheis have this day purchased from us the entire stock of the Maumee Paper Co., and we have issued to them certificates therefor; and whereas the certificates for eighty-four shares of the stock so owned by us are missing and we are unable to find same: Now, therefore, we hereby agree to hold said purchasers safe and harmless of and from all loss, cost, trouble or expense, which may arise from the loss of said certificates.
[Signed] "WM. S. SWAN.
"A. B. COFFIN.
"Copy of that given Gregory & Boyce."

All of the stock in the Maumee Paper Company was owned by Mr. Swan, Mr. Coffin, and the estate of Thomas P. Henish. It was all sold to Mr. Gregory and Mr. Boyce, and was all transferred to them, ex-

cept one share to Mrs. Gregory, one share to Mrs.
Boyce, and one share to Paul Voorheis. Mr. Gregory
and Mr. Boyce paid $2,000 in cash. The balance un-
paid was evidenced by the notes of the Maumee Paper
Company made by Mr. Gregory and Mr. Boyce. The
corporation obtained nothing for these notes, and it
may be doubtful if its notes could be issued to pay for
stock assigned not to the corporation, but to Mr. Greg-
ory and Mr. Boyce individually. We do not, however,
think it necessary to pass upon that question.

In *Bouma* v. *Dubois,* 169 Mich. 422 (135 N. W. 322),
it was said:

"A reference to the charge from which we have so
fully quoted will show that in this same connection the
jury was told, over and over again, correctly, what
the rule of law is. While the use of the word 'perhaps'
was unfortunate, we do not think the jury was misled.
It has been said:

"'Where the charge of the court, taken as a whole, correctly
states the law as applicable to the particular case, and clearly
defines the issue, the fact that sentences are objectionable, when
considered independent of the context, does not constitute re-
versible error.' *Provost* v. *Brueck,* 110 Mich. 136 (67 N. W.
1114).

"See, also, *Smalley* v. *Railway Co.,* 131 Mich. 560
(91 N. W. 1027); *Beattie* v. *City of Detroit,* 137 Mich.
319 (100 N. W. 574); *Whelpley* v. *Stoughton,* 119
Mich. 314 (78 N. W. 137)."

In the instant case no one can read the charge of the
court without concluding that the jury understood that
if the notes were received as payment the plaintiff
could not recover, and that in deciding that question
they should take into consideration not only what was
said and done, but all of the facts and circumstances
shown upon the trial. They could not have misunder-
stood the court.

It is suggested now for the first time that the statute
of limitations has run. The plea was the general issue.

It contained no suggestion of the statute of limitations, and the point was not made in the court below. We think it too late to make it now. *Conger* v. *Hall,* 158 Mich. 447 (122 N. W. 1073).

Judgment is affirmed, with costs to the plaintiff.

KUHN, C. J., and STONE, OSTRANDER, BIRD, STEERE, BROOKE, and FELLOWS, JJ., concurred.