## CHARLES F. BROWN v. OSHEA G. DUNCKEL.

46    29
108   387

*Satisfaction of one mortgage by giving another.*

A debtor gave a note for his indebtedness and a chattel mortgage upon his horse. The indebtedness increased and he gave another mortgage upon other property. Meanwhile he sold the horse. Afterwards his creditor expressed the opinion that the mortgages had become void, and asked for a new mortgage on the same and other property. When this was given the original note was surrendered. The debtor objected to including the horse in the latest mortgage, claiming that he understood that mortgage was taken in place of the others, but the agent for the creditor insisted and he included it. The agent afterwards took the horse on the first and third mortgages, and the purchaser brought replevin for it. *Held* that it could not be said that the court erred in so instructing the jury as to leave them to

decide whether the giving of the new mortgage and the surrender of the note were meant to operate as payment of the original mortgage, especially as the bill of exceptions did not contain all the testimony, and there might have been other evidence to support the charge delivered.

The giving of a note and mortgage for a previous debt do not, as matter of law, discharge the debt unless it is so agreed or understood.

But where the evidences of the previous debt are surrendered when new securities are taken, this is *prima facie* evidence of satisfaction, but not conclusive.

Error to Ingham.   Submitted April 7.   Decided April 13.

REPLEVIN.   Defendant brings error.   Affirmed

*L. A. Smith* for plaintiff in error.

*Cruickshank & Warren* for defendant in error.   Surrender of the evidence of a debt strongly indicates payment: *Whitteraby v. Mann* 11 Johns. 576; *Johnson v. Weed* 9 Johns. 310; *Sage v. Walker* 12 Mich. 425; *Gardner v. Gorham* 1 Doug. (Mich.) 507; *Hotchin v. Secor* 8 Mich. 494; *Sears v. Smith* 2 Mich. 243; *Burchard v. Frazer* 23 Mich. 224.

COOLEY, J.   This case began in justice's court where Dunckel replevied from Brown a horse which he claimed as owner.   Brown defended in the right of Roehm & Davison for whom he was agent.   Upon trial on appeal in the circuit court it was shown that one Malone was formerly the owner of the horse; that on April 20, 1879, Malone was indebted to Roehm & Davison, and gave them his promissory note for $200, payable with interest six months from date; that on November 21, 1879, this note remained unpaid and Malone was also indebted to Roehm & Davison on account; the sum with the amount of the note being in all about $375; that to secure the payment of the whole sum Malone on that day gave to the creditors a chattel mortgage upon the horse and other property, the condition of the mortgage being that the indebtedness with interest should be paid on the 20th of March, 1880; that the dealings between the parties continued and the indebtedness increased until March

29, 1880, when Malone gave the creditors a second mortgage on other property for further security ; that in May following the indebtedness was still unpaid, and Malone went to Detroit to see the creditors, and in a conversation with Davison the latter expressed the opinion that the mortgages had become worthless and void, and he desired Malone to give a new mortgage on the same and other property. This Malone at first objected to, but the new mortgage was finally given on June 9th following.

Previous to this transaction, and in February, 1880, Dunckel had bought the horse of Malone with knowledge of the mortgage. No question is made in this case of his right to the horse unless it is still subject to the mortgage lien. Whether it is or not depends upon the circumstances attending the giving of the third mortgage. It was testified by Malone that Brown, as agent for the creditors, called upon him to take the new mortgage ; that the amount then due was $594.91, and for this sum a note was given and also a mortgage on the horse and other property, to secure the payment within thirty days. Brown then, as agent for Roehm & Davison, receipted the account as paid by note, and the first note was surrendered to Malone. The witness also further testified "that at the time he gave said last mortgage he desired said Brown to release said horse from said first mortgage because he had sold said horse to Dunckel and received his pay, and that said Brown refused so to do, and told him that he did not purpose to release anything. That said Brown required him to include said horse in the third mortgage, and threatened to take it on the first unless he did so, but without assigning any reason why he so desired it included in said last mortgage." Also "that he understood, and thought Brown also understood, that said last mortgage was to be received by Roehm & Davison in the place and stead of the first two." Brown was also sworn as a witness, and testified that he took possession of the horse under the first and third mortgages.

It was contended before the jury by Dunckel that the demands for which the first mortgage was given were

discharged when the third mortgage was given, and the case was made to turn upon that claim. In the instructions to the jury by the trial judge occur the following passages, all of which were excepted to: "My attention has been called to the circumstance that the $200 note and the account for which the first mortgage was given were surrendered. Now upon that subject I must say, that is certainly a very important circumstance; a very important circumstance. I cannot say as a matter of law it is decisive, but the surrender of the evidence of the debt for which the first mortgage was security, certainly the significance of the circumstance tended strongly to show what the intention of the parties was, but it is to be considered in connection with all the other circumstances in the case, from which you must determine as best you can whether the parties intended that the first mortgage should survive the last one or not. It is not necessary to prove a special and direct agreement between the parties that the giving of a new note for an old one should operate as payment of the old one, but that may be determined by the circumstances and actions of the parties." The judge also instructed the jury in response to requests, that the giving of a new note for the amount due on a former which is surrendered up will operate as payment of the old note if the parties so intended it, but the surrender of the note is not entirely conclusive upon that question. It may be explained and shown, notwithstanding, that the parties really intended only to take an additional security without canceling the old indebtedness. Also that the possession of the old note and account receipted by Malone is *prima facie* evidence that it was given up upon its payment, but this is a circumstance that may be explained. Also that the giving of a note for the debt did not as matter of law operate as payment of the debt unless it was so expressly agreed, but it should be understood to be so expressly agreed if the jury could ascertain from the facts and circumstances that it was so mutually understood between the parties. The jury returned their verdict for the plaintiff.

The instructions given were in accordance with the rulings in *Hotchin v. Secor* 8 Mich. 494; *Sage v. Walker* 12 Mich. 425, and *Burchard v. Frazer* 23 Mich. 224, and were correct if there was evidence in the case to justify them. We have recited the most important evidence so far as it is given in the bill of exceptions, and cannot say the instructions were wholly unwarranted. The testimony of Malone and Brown tends strongly to show that the pre-existing indebtedness was not understood to be satisfied when the third mortgage was given, but it was not conclusive. The bill of exceptions does not purport to contain all the evidence, and there may have been proofs of a tendency equally strong the other way.

On the whole we cannot say that any error was committed, and the judgment must be affirmed with costs.

The other Justices concurred.