SAVINGS & LOAN SOCIETY v. BURNETT et al.*

No. 14,553; June 27, 1894.

37 Pac. 180.

**Trust Deed—Security for Future Advances.**—A deed of trust to secure $20,000, and also all further indebtedness of the grantor to the third party that might be contracted during the continuance of the trust, not exceeding $35,000, provided that on payment the trustees should reconvey to the grantor, his heirs or assigns, and contained a power of sale on default. Held, that where such grantor afterward made an absolute conveyance to B., and paid the original debt secured, such deed of trust afforded no security for other sums advanced by such third party to the grantor for the purposes stated therein, with actual notice of such conveyance, and that a purchaser at the trustee's sale made on default in payment of such advances held the title in trust for B.

**Trust Deed—Quieting Title.**—In an Action by Such Purchaser to quiet title, the court found that the grantor was seised in fee originally, that he executed the deed of trust, and that default was made, and the property sold to plaintiff. Held, that such findings did not establish a full fee simple title in plaintiff, where it appeared that such default in payment was of sums not secured by the deed of trust.

**Trust Deed—Title of Purchaser.**—Even if $2,000 of the original debt secured was unpaid, a sale of the property regarded by plaintiff as sufficient security for $35,000 did not give an absolute legal title to the purchaser having knowledge of all the facts.

**Quieting Title.**—The Complaint in an Action to Quiet Title. alleged that the grantor was holding the property against his own deed, and that plaintiff was seised of and holds all the estate, right, title and interest, at law or in equity, which such grantor ever had or could acquire. The answer specifically denied such allegations and alleged the execution of a deed to one B., but asked no affirmative relief. Held, that the pleadings warrant findings and sustain a judgment for defendants.

APPEAL from Superior Court, City and County of San Francisco; John F. Finn, Judge.

Action by the Savings and Loan Society against John M. Burnett and others to quiet title. From a judgment for defendants and from an order denying its motion for a new trial plaintiff appeals. Affirmed.

*For subsequent opinion in bank, see 106 Cal. 514, 39 Pac. 922.

A. N. Drown for appellant; Jarboe & Jarboe and Robt. H. Countryman (Robt. Y. Hayne of counsel) for respondents.

HAYNES, C.—This action was brought by the Savings and Loan Society against Denis Mahoney, John M. Burnett personally, and also as trustee, and the nine children of Mahoney, for the purpose of quieting the title of the plaintiff to certain real estate in the city of San Francisco, and determining the adverse claim of the defendants thereto. The defendants had judgment, and the plaintiff appeals therefrom, and from an order denying its motion for a new trial.

On May 22, 1868, Mahoney, being then the owner of the land in question, borrowed $20,000 from appellant, and gave his promissory note therefor, and also executed a deed of trust of the premises described in the complaint to E. W. Burr and B. D. Dean to secure said sum, and also "all further indebtedness of the party of the first part to the party of the third part [appellant] that might be contracted during the continuance of the trust, not exceeding $35,000 at any one time, whether evidenced by promissory notes or otherwise, whether for interest, insurance, or for moneys expended in and about said premises for repairs, taxes, liens, or encumbrances," etc., and provided that upon full payment of all existing and accruing indebtedness the trustees should reconvey to Mahoney, his heirs or assigns. It also contained a power of sale upon default in the repayment of the sum borrowed and the interest thereon, "or in the reimbursement of any amounts herein provided to be paid, or of any interest thereon, and all future advances, disbursements, accounts, balances, and dues" —the power to be executed, on the application of appellant, by sale at public auction, and by conveyance to the purchaser —and further provided that such deed of conveyance, with its recitals of default and notice of sale, should be conclusive proof thereof, "and effectual and conclusive against the party of the first part, his heirs and assigns, and all other persons." On December 28, 1881, the premises in question (the same as described in said deed of trust) were sold thereunder by the trustees in the manner provided, and appellant became the purchaser, its bid being $17,250 (that being the amount then claimed to be due appellant, and secured by the deed of trust); and on the next day the trustees executed a

deed in due form to appellant, and under this deed it claims title. Respondents answered, taking issue upon appellant's seisin and ownership, and claimed and alleged title to the land in question in John M. Burnett, as trustee under a deed executed to him by said Denis Mahoney on March 6, 1869, declaring certain trusts in favor of Mahoney's nine children, a copy of which deed is attached to the answer. The trusts declared in this deed were ''to receive the issues, rents and profits of said premises, and apply the same, or such portion thereof as shall be necessary, for the support, maintenance and education of the nine children of Denis Mahoney,'' until the youngest of said children should arrive at age; that any surplus profits should be invested, and, when the youngest child should arrive at majority, to convey to them the said lands— each taking an equal undivided interest, and a like interest in the accumulations. It was also provided that no estate should vest in the trustee, directly, contingently, or otherwise, except for the purposes of the trust. Said deed of trust also contained the following clause: ''And in case it should become advisable, in the judgment of the said Denis Mahoney and Burnett, to make improvements upon said property, the said trustee is hereby authorized to raise money, by mortgage or otherwise, on said property, or such part thereof as may be necessary for that purpose, and to pay the same, and all charges and interest thereon, out of the rents and profits of the whole of said property, after the application of so much thereof as may be necessary for the support, maintenance and education of said children, in place of investing the said surplus as hereinbefore provided.''

The point of the controversy is this: Appellant claims that the amount for which the property was sold to it, under said first deed of trust was due to it for moneys loaned and advances made for taxes, street assessments and other purposes, directly connected with the property, including part of the original loan, and that all these sums, whether loaned or advanced before or after the execution of the trust deed to Burnett, were secured by said first deed of trust, and that, the sale being in all respects regular, the entire title to the premises passed to it by the sale and conveyance thereunder, while respondents claim that the original loan, and the interest thereon, and all advancements made by appellant prior to the

execution of the trust deed to Burnett, were paid and discharged; that the sum for which the property was sold by appellant consisted of loans and advancements made after the conveyance in trust to Burnett, and with knowledge of such conveyance, and therefore were not secured by said first deed of trust; that the sale was therefore without authority and the deed to appellant pursuant to said sale conveyed no title.

The findings state the facts very fully, and, in addition to the general facts above stated, other facts found by the court are essential to a consideration of the points made by appellant. The original loan of $20,000 was to be paid in seventy-two monthly installments, commencing in September, 1868, and at the date of the trust deed to Burnett, March 6, 1869, the amount of that loan remaining unpaid was $19,754.49. Appellant paid the taxes on the property covered by the deed of trust for the years 1869–70, 1870–71 and 1871–72, and also a considerable sum for insurance. On May 25, 1871, money was required for repairs and improvements on the property; and, on that day, appellant, at the request of Mahoney and of Burnett, claiming to act as trustee, loaned or advanced $500 for that purpose, and on March 5, 1872, for some purpose connected with the property and, at the like request, loaned the further sum of $650. For these sums, respectively, Mahoney and Burnett gave their promissory notes payable at one year—the latter signing the notes as trustee—and in each of these notes it was recited that they were secured by the deed of trust made by Mahoney to Burr and Dean, reciting its date, and where recorded. Prior to the execution of these notes the insurance above mentioned, and the taxes for 1869–70, had been repaid; and on June 11, 1870, all of the original loan had been paid, except the sum of $2,000. On November 13, 1873, there remained unpaid said balance of $2,000 and the said two promissory notes above mentioned, together with interest and two years' taxes paid by appellant; and Mahoney and Burnett then desired to obtain the further sum of $249, with which to pay a street assessment charged upon the property. Upon a statement of these several matters, with accrued interest, it was found that they amounted to $4,565; and thereupon Mahoney and Burnett—the latter claiming to act as trustee—executed a promissory note for that sum, payable to appellant, at one year,

with interest, and this note also recited that it was secured by said deed of trust made by Mahoney to Burr and Dean; said Burnett signing the note, "John M. Burnett, Trustee of Mahoney Estate." In this connection the court, after finding the indebtedness for which said note was given, and setting out the note in full, proceeded to find as follows: "And that the said note last above referred to was taken and received by the said Savings and Loan Society, as and in payment and satisfaction and extinguishment of all sums of money then due to it by said Denis Mahoney or the said John M. Burnett, and of all claims and demands which it then had against the said Mahoney or the said Burnett, or either of them; and that at the time of the execution of the note last herein referred to the said plaintiff stamped, and marked as paid and canceled, and surrendered up and delivered up to the said Denis Mahoney, the promissory note for the sum of $20,000, hereinbefore referred to, and marked and entered the same as satisfied and canceled upon the books of record kept by it; and that the note last above referred to was taken in payment and satisfaction of all the sums of money hereinbefore above referred to." After this transaction appellant paid the taxes on the property up to and including the fiscal year 1881–82, and certain insurance on buildings, and also paid several street assessments, at the request of Mahoney and Burnett, which had become liens upon the property in question; and these payments, together with said promissory note of November 13, 1873, for $4,565, and accrued interest on all said sums, made up the amount of the claim for which said property was sold by the trustees, Burr and Dean, to appellant, after deducting certain payments of interest on said note, which payments were continued to August, 1878. It is also found that the sale of the property was several times postponed, at the request of Mahoney and Burnett, upon payment by them of the cost of publishing the notices of sale.

Appellant's first point is that the findings do not support the judgment, inasmuch as they show that plaintiff was seised in fee of the land at the commencement of the suit. It is not claimed that there is an express finding of title in fee in the plaintiff, but that it is found that Denis Mahoney was seised in fee originally; that he executed the deed of trust to Burr and Dean; that default was made, and the property sold and

conveyed to the plaintiff. And these facts, it is argued, "establish irresistibly and completely an absolute and full fee simple title in appellant at the dates alleged." But this argument assumes either that such title was vested in the trustees, Burr and Dean—that they could, under any and all circumstances, convey a good title—or that a default was in fact made, under which the trustees were authorized to sell and convey. The deed of trust specified the only condition upon which the trustees could sell and convey; and unless that condition existed the sale and conveyance were each void, under section 870 of the Civil Code, which provides: "Where a trust in relation to real property is expressed in the instrument creating the estate, every transfer or other act of the trustees, in contravention of the trust, is absolutely void." By the express terms of the deed of trust, the power to sell depended upon Mahoney's default in the payment of moneys secured thereby, and upon payment they were bound to reconvey to Mahoney. It may be conceded that their deed to appellant vested a prima facie title in appellant; but, as this is a suit in equity to quiet title, appellant must have something more than an apparent title. But, in this connection, appellant insists that no title was vested in Burnett by the trust deed to him; that, by the deed of trust to Burr and Dean, Mahoney "emptied himself of his whole estate, and there was nothing left in him to be conveyed to Burnett." The learned counsel is mistaken. There was left in Mahoney the right of possession, carrying with it the rents and profits, and the right, upon payment of his indebtedness to the Savings and Loan Society, to have the entire estate and title as he had held and enjoyed it before; and this right to the possession and use of the property, and the right to have again the unencumbered estate and title upon payment of his debt, he could and did convey to Burnett. Whether the deed of trust to Burr and Dean vested in them the legal title to the land is controverted by respondent; but, assuming that it did, upon payment or satisfaction of the debt thereby secured the trustees had, at the most, the dry legal title, without any interest or ownership in the land. "When the purposes for which an express trust was created cease, the estate of the trustee also ceases": Id., sec. 871. And for that reason, if the purposes of the trust here created had ceased by payment of the debt, the subse-

quent deed of the trustees to appellant conveyed no estate or interest in the land; and whether such payment had been made before such conveyance is therefore a vital question in the case, unless it shall be held that the deed of trust to Burr and Dean was a valid security for all advances made by appellant—as well those made after knowledge of the conveyance to Burnett as of those made before.

1. All the advances made by appellant after the original sum of $20,000 were optional. The terms of the deed of trust did not require it to make further advances. Assuming that appellant had actual notice of the conveyance to Burnett in trust for the children of Mahoney, it had notice that Mahoney no longer had power to deal with or encumber the property. To the extent the terms of the contract between them, expressed in the deed of trust, required them to make loans or advancements, if any, the Savings and Loan Society might safely go, as any conveyance Mahoney might make would be subject to its requirements. Mahoney not only conveyed all the interest he had in the property to Burnett, but he reserved no power or right over it. It is obvious that those cases cited by counsel as to the rights of a subsequent mortgagee, where advancements have been made by a prior mortgagee after notice of the second mortgage, involve quite different facts, for in those cases the mortgagor remained the owner of the property mortgaged, with full power to create additional liens upon it, so that the question there was not as to the validity of the liens, but as to which had priority. The principles involved are applicable here, however, with even greater force. In such cases the great weight of authority seems to establish the following propositions: (1) A mortgage for obligatory advances is a lien from the date of its execution, and will therefore secure such advances, although other encumbrances are put upon the property before such advances are in fact made, and such advances are not affected by the mortgagee's knowledge of the subsequent encumbrances. (2) But where the mortgagee is not bound to make the advances, and has actual notice of a later encumbrance, such later encumbrance will take precedence of the first mortgage, as to all advances made after such notice. For a discussion of these propositions, see 1 Jones on Mortgages, secs. 369–371, and the numerous cases there cited, and also Tapia v. Demartini, 77 Cal. 387, 11 Am. St.

Rep. 288, 19 Pac. 641. If, therefore, Mahoney had mortgaged the property in question to Burnett, and appellant, with actual notice of such mortgage, had made these advances to Mahoney, such advances would have been postponed, and, as to Burnett's mortgage, would have taken the place of a junior mortgage. Much more, then, would an absolute conveyance by Mahoney cut off the lien of future advances to Mahoney which appellant was not obliged to make. If, therefore, the further advances made with actual notice of the deed to Burnett were secured by the deed of trust to Burr and Dean, it must have been because of Burnett's relation to these advancements, or because of the purposes to which the money advanced was applied. It cannot be questioned that both Burnett and the beneficiaries under the deed of trust to him were charged with notice of the deed of trust to Burr and Dean, and of all sums of money loaned or advanced thereunder prior to the date of the deed to Burnett, and that the property was liable therefor, and for all moneys thereafter advanced (if any were advanced) prior to actual notice to appellant of such conveyance. But, after such notice to appellant, the deed of trust, which operated as security for moneys theretofore loaned or advanced, could not be extended to further advances unless Burnett had the power, as trustee, to bind his cestuis que trustent, not only for moneys borrowed, but by a security to which he was not a party.

The powers of trustees are thus defined: "A trustee is a general agent for the trust property. His authority is such as is conferred upon him by the declaration of trust and by this chapter, and none other. His acts, within the scope of his authority, bind the trust property to the same extent as the acts of an agent bind his principal": Civ. Code, sec. 2267. The only clause in the deed of trust of Burnett, empowering the trustee to raise money, has been hereinbefore quoted. No reference is made in any manner to the deed of trust to Burr and Dean as a means of securing money for improvements, nor of any reservation of a power in Mahoney to secure further advances thereunder for any purpose; and, as Burnett did not execute a mortgage or other instrument pledging the trust property, a discussion of his power to do so under the terms of the trust deed is not necessary, for if it be conceded that he had the power to procure all these advancements, and

to secure the same by a mortgage with a power of sale, or by a deed of trust such as that in question, which ordinarily creates a strict legal right which may be enforced without the aid of a court of equity, no such legal right was created by Burnett, and the advancements could only be made a charge upon the trust property by the aid of a court of equity. The deed of trust given to secure appellant did not restrict the use of the money loaned to any particular purpose, except as to the payment of taxes, insurance, etc., which the appellant or the trustees were empowered to pay of their own volition; and if, instead of taking the note of November, 1873, for $4,565, the bank had loaned to Mahoney at that date the difference between that sum and $35,000, to which the security was limited, and had taken the note for the last-named sum, and this sum had been used by Mahoney for his individual purposes in no way connected with the property, it would hardly be contended that Mahoney or Burnett, or both jointly, could charge the estate of the children with such a liability; and, if not, it is apparent that appellant's claim is based upon an equity arising from the fact that the moneys so advanced were used to relieve the trust estate from liens which endangered the estate of the beneficiaries, and not because of the deed of trust under which appellant claims they were made, and such equity could not be enforced through or under the terms of a dry legal contract to which Burnett was not a party. The sale to appellant, therefore (assuming the facts found by the court to be sustained by the evidence), did not vest in appellant an absolute estate in the land. Burr and Dean were not only trustees for the bank, but were also trustees for Mahoney, and were bound to reconvey to him or his assigns upon the condition expressed in the deed; and unless the facts existed authorizing a sale, appellant took the conveyance subject to the same trust imposed upon them. It is true the deed of trust under which the sale was made contained a provision that the recitals in the deed to be made by them to the purchaser "shall be conclusive proof of such default, and of the due publication of such notice [of sale], and any such deed or deeds, with such recitals therein, shall be effectual and conclusive against said party of the first part, his heirs, assigns, and all other persons." But such recitals could only avail for the protection of an innocent purchaser without notice of any

want of authority in the trustees to sell, and could not be invoked by appellant for its protection. The deed of trust to Burr and Dean was not an absolute deed of trust, but a deed of trust in the nature of a mortgage. The distinction between these instruments is clearly stated in the recent case of Powell v. Patison, 100 Cal. 235, 34 Pac. 676, and in Perry on Trusts, sec. 602d. Speaking of mortgages with power of sale and deeds of trust, it is said: "At law, both kinds of deeds purport to convey the legal title to the grantee or creditor or trustee; but in equity the land, the title, and deeds stand for security of the debt. The debt is the principal thing, and the conveyance of the land is collateral to the debt. The mortgagor in both cases has an estate in the land, called an 'equity of redemption.' If he fails to pay the debt, his equity of redemption is barred upon due proceedings had; but, if his debt is paid at any time before his equity is defeated by the steps appointed to be taken, it becomes absolute, and he is entitled to a reconveyance, or a discharge of the mortgage, as the case may be." Courts do not favor constructions that confer upon trustees absolute and uncontrollable powers. Burr and Dean were not the absolute owners of the property, but were the donees of a power over it for the benefit of appellant; and, if the debt legally secured by the deed of trust to them had been satisfied before the sale, they could convey no greater interest in the property than was then vested in them, and appellant in such case holds the legal title in trust for respondents.

2. Appellant contends, however, that the finding that the note for $4,565, dated November 13, 1873, was taken and received by appellant in payment and satisfaction of all claims and demands which it then had against Mahoney or Burnett, or either of them, is not justified by the evidence; that, if said note was not so taken, at least the $2,000 remaining unpaid of the original loan of $20,000 was a valid lien upon the property, and sufficient to sustain the validity of the sale by the trustees to appellant. We think the evidence sufficient to support the finding. At the time the note for $4,565 was given, there was a balance of $2,000 due upon the original note for $20,000, for which Mahoney alone was liable. In addition to that, some taxes had been paid by appellant, and two small notes for moneys loaned had been given by Mahoney and Burnett, the latter signing as trustee.

The note for $4,565 covered the amount of these several items, and the accrued interest, and upon its execution the $20,000 note was canceled and surrendered; and the note then taken represented the entire claim of appellant at that date, and this note purported to be secured by the deed of trust. There does not appear to have been, in words, any express agreement as to the effect of this transaction in relation to the question of payment. Nothing was said upon that subject. Mr. Burr testified, in substance, that the whole balance was made into one note, instead of having three notes upon which to carry the interest every month, and to that extent the $4,565 note was made at his instance; that the consolidation was merely to facilitate the bookkeeping of the bank. It is conceded that the mere fact of the acceptance of a note for a pre-existing debt does not extinguish it, or that one simple executory contract does not extinguish another for which it is substituted, unless such be the agreement of the parties. Whether such was the agreement of the parties is a question of fact, which the court, in the absence of a jury, was required to determine: Griffith v. Grogan, 12 Cal. 324. In Brown v. Dunckel, 46 Mich. 32, 8 N. W. 537, it was said: "The giving of a note for the debt did not, as a matter of law, operate as a payment of the debt, unless it was so expressly agreed; but it should be understood to be so expressly agreed if the jury could ascertain from the facts and circumstances that it was so mutually understood between the parties." In Stanley v. McElrath, 86 Cal. 455, 10 L. R. A. 545, 25 Pac. 16, it was said: "The payment of money is not necessary to the extinguishment of an obligation. A debt may be paid by the giving of a note, if it be offered and accepted as payment." The facts that, as to the balance of the $20,000 note, a new party was added as a joint maker; that the old note was surrendered; that there was not at any time an offer to return the new note, nor any demand for the redelivery of the former; that the new note was set down in the statement of the items comprising the sum for which the property was sold as constituting part of the appellant's claim; that the new note, upon its face, purported to be secured by the deed of trust, which provided for securing other sums besides the $20,000 note—tend strongly to show such understanding. The giving of a new note is at least a conditional payment, and suspends the first

obligation until the maturity of the new note, when the creditor may suspend or cancel the new obligation, and proceed upon the original: Brewster v. Bours, 8 Cal. 506. "When suit is brought against a defendant upon a debt, whether evidenced by a note or otherwise, and it appears that he has given a bill or note for the same debt, which has become mature and is unpaid, while it does not operate as a bar to the suit, it is essential to the plaintiff's recovery that it be produced and surrendered up, or otherwise satisfactorily accounted for at the trial. This is necessary as a safeguard to the defendant, for, if the plaintiff should have passed it off before maturity to a third party, the defendant might be compelled to pay the debt a second time": 2 Daniel on Negotiable Instruments, sec. 1275. See, also, Burdick v. Green, 15 Johns. (N. Y.) 247; Rayburn v. Day, 27 Ill. 47; Morrison v. Welty, 18 Md. 176. We think there is such evidence as forbids us to set aside the finding that the new note was given and received in payment of the balance due upon the original note. But, even if it were otherwise, we think a sale of the whole property, which was regarded by appellant as sufficient security for $35,000, should not be held to give an absolute legal title to a purchaser having knowledge of all the facts, but that, in such case, appellant, by the purchase, became a trustee, and held no other or better title than that held by Burr and Dean.

3. Appellant further excepts to the findings, in that it is there said that Burnett "claimed to act as trustee," while appellant contends that the evidence shows that he "did act as trustee." What Burnett did, and how he did it, are fully set out in the findings. Whether these acts were the authorized and valid acts of a trustee is a conclusion of law. That he "claimed to act as trustee" is the finding of a pure matter of fact.

4. The finding that the $20,000 note was canceled upon appellant's books is amply sustained by the evidence. Mr. Burr testified that the new note was taken to simplify or facilitate the bookkeeping of the bank, as the monthly interest would be computed upon one note, instead of three. The plain inference is that the account of the $20,000 note was balanced, closed or canceled. If it had not been closed, the books of the bank would have shown the debt to be $2,000 more than is

claimed.   Besides, no mention is made of any balance of that account in the statement under which the property was sold.

5. E. W. Burr, a witness on behalf of the plaintiff, was asked by counsel for the plaintiff the following question: "To what extent, if at all, was it the intention of the bank, or of yourself acting for the bank, at the time of taking this $4,565 note, to receive it in extinguishment or satisfaction of the existing obligation or indebtedness?"   An objection was sustained, and the same question, varied somewhat in form, was several times repeated, and objections sustained to each.   It is not necessary to consider whether the court erred in these rulings, since the final question of the series was not objected to, and in response to that, as well as in the testimony of the same witness to preceding questions, the witness stated all that could be properly said upon the subject, even to including the "purpose" for which, as well as the circumstances under which, it was taken.

6. The finding that appellant had full knowledge of the deed to Burnett from and after the time it was recorded is sustained by the evidence.   It is clear that on May 25, 1871, appellant required Burnett, as trustee, to sign the $500 note. Some small amounts had been advanced for taxes and insurance; but these sums were all repaid prior to the making of this note, except the taxes for 1870–71, amounting to $415.37, which was included in the note of November 13, 1873, which the court found was received in payment of all sums then unpaid.   While there is no direct evidence of actual knowledge or notice of the Burnett deed prior to May 25, 1871, there was evidence tending to show that such actual notice was obtained from the record presumably at or about the date at which the deed was recorded.

7. The objection that the pleadings do not warrant the findings nor sustain the judgment is not maintainable.   The complaint alleged that Denis Mahoney was holding the same against his own deed, and "that plaintiff is seised of, and now holds, all the estate, right, title and interest, at law or in equity, which said Denis Mahoney ever had, or could at any time acquire, of, in or to said real property, or any part of the same," and that defendants wrongfully claim, etc.   The answer specifically denied all these allegations, and alleged the execution of the trust deed to Burnett.   No affirmative relief

was prayed for by defendants and none was given. The issue was upon the title of the plaintiff—whether, as against the defendants, it had such title as would authorize a decree in its favor—and the judgment was upon that issue.

The conclusions reached have not been arrived at without difficulty. It has been impossible to notice in detail the very extended and able arguments of counsel or to close our eyes to the hardships of appellant's situation. Whether any relief may yet be obtained has not been considered, and any language used which might be construed as an intimation upon that point must be disregarded. I think the judgment and order appealed from should be affirmed.

We concur: Searls, C.; Belcher, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.