'(May 17, 1897.)

## WILLOWS v. ROSENSTIEN.

[48 Pac. 1067.]

CHATTEL MORTGAGE—AGREEMENT TO CONTINUE MORTGAGE AS SECURITY AFTER FULLY PAID—SECTION 3351 OF THE REVISED STATUTES CONSTRUED.—The plaintiff gave to defendant a chattel mortgage to secure an indebtedness of some $341. Subsequently plaintiff and his copartner becoming indebted to defendant, they jointly executed to the defendant a chattel mortgage upon property belonging to the firm for the sum of $1,215, in which was included the amount of said first mortgage of $341. The mortgage for $1,215 was subsequently paid in full. By an agreement between plaintiff and defendant the latter was, however, to hold said first mortgage as security for an individual indebtedness existing and to arise from future advances to be made by defendant to plaintiff. Such agreement is contrary to the provisions of section 3351 of Revised Statutes of Idaho. Evidence reviewed and found to support the verdict.

(Syllabus by the court.)

APPEAL from District Court, Latah County.

Sweet & Steele, for Appellant.

Respondent Willows, on August 11, 1894, executed his promissory note to the appellant Rosenstien for $341.97, due one day after date, and on the same day executed a chattel mortgage upon the crop of wheat to be grown in 1895 upon certain real estate described therein. On or about the tenth day of October, 1895, Rosenstien took possession under the mortgage of a portion of the wheat, for the reason, as he claims, it was not being properly cared for, and that his security was becoming worthless. The defendant Rosenstien sets up by way of separate answer the fact that he held a mortgage upon the grain which was unpaid. The plaintiff Willows admits the execution of the mortgage, and also admits that sixty-two dollars was due thereon. The verdict and the judgment in this cause should be vacated, for the reason that upon the pleadings and upon the testimony the action of trover will not lie. Defendant Rosenstien held a mortgage upon the grain which was unsatisfied. This is admitted both in the pleadings and by the plaintiff Willows. Willows admits there was $201.99 due

on this mortgage, and he had delivered $140 worth of grain to Rosenstien prior to the time the wheat was taken possession of. There being an account due and unpaid upon the mortgage and note there could be no conversion by the mortgagee. (*Heyland v. Badger,* 35 Cal. 404.) Section 4523 of the Statutes of Idaho provides in substance that a mortgage of real property shall not be deemed a conveyance, whatever its terms, so as to enable the mortgagee to recover possession without foreclosure. This section applies only to real estate mortgages. (*Fogarty v. Sawyer,* 17 Cal. 592.) A mortgagor cannot maintain trover against the mortgagee after default in the conditions of the mortgage. (Jones on Chattel Mortgages, secs. 435, 437.) A mortgagee cannot be charged with wrongful conversion upon taking possession after default any more than he could after an alleged conversion where he was put into possession by the mortgagor. (Jones on Chattel Mortgages, secs. 702, 703.) Rosenstien had the right after condition broken to take possession of the property covered by the mortgage. The instrument in question provides, in substance, that if default shall be made in the payment of the money, or said first party does not take proper care of the property, or if said second party shall at any time deem himself insecure, it shall be lawful for said second party, or his agent, to take said property wherever it may be found and sell or dispose of the same. (*First Nat. Bank v. Wilbur,* 16 Colo. 316, 26 Pac. 777; *Jones v. Annis,* 47 Kan. 478, 28 Pac. 156.) The property was being destroyed and his security was becoming worthless. (*Huebner v. Koebke,* 42 Wis. 319; *Cline v. Libbey,* 46 Wis. 123, 32 Am. Rep. 700, 49 N. W. 832; *Botsford v. Murphy,* 47 Mich. 536, 537, 11 N. W. 375, 376; *Werner v. Bergman,* 28 Kan. 60, 42 Am. Rep. 1521.) Having a mortgage upon the grain for $341.97, and having expended $133 for threshing the grain, and paid for heading and other work thirty-eight dollars, he took possession of the grain to prevent his security from being lost, and hauled it to the nearest warehouse at his own expense, stored it as wheat received from Willows, and there it remained without sale or any realization of assets. He never used the wheat for any purpose. His only purpose in hauling the grain in was to prevent it being damaged. The foregoing facts are practically uncontradicted, and we insist

.that they do not constitute conversion, and that therefore the evidence does not sustain the verdict and judgment as is alleged in specification of error. (*Jones v. Annis,* 47 Kan. 478, 28 Pac. 156; Jones on Chattel Mortgages, secs. 429-431, 702; *Byrnes v. Hatch,* 77 Cal. 244, 19 Pac. 482.) The next error we call attention to is in the instruction with reference to the payment of the $341.97 note which the mortgage was given to secure. By this instruction the court states that if the $341.97 was included in the new note for $1,215 given by Willows and Hedrick, and if the $1,215 note had been paid, that the mortgagee had no lien. In the pleadings it is admitted by Willows that the mortgage was held to secure a balance of sixty dollars due from Willows to Rosenstien which arose out of an indebtedness in addition to the note. Admitting that the $341.97 note was included in the $1,215 note, it would not be payment. (Edwards on Bills and Notes, 3d ed., sec. 752.)

S. S. Denning and Forney, Smith & Moore, for Respondent.

In order for contradictory instructions to be ground for reversal, the exception thereto must be upon the ground that they are contradictory. (*Black v. City of Lewiston,* 2 Idaho, 276, 13 Pac. 80; *Yoakum v. Mattasch,* 26 S. W. 129 (131); *Sierra Union Water & Min. Co. v. Baker,* 70 Cal. 572, 8 Pac. .305, 11 Pac. 654.) There must be grounds stated in the exception to the oral charge of the court or they will be disregarded. (Cases *supra,* on same point; *Jones v. Osgood,* 6 N. Y. 233; 2 Ency. of Pl. & Pr., p. 948, cases.) The proposition that a chattel mortgage passes title and right to possession to the mortgagee as at common law, the statutes of Idaho, however, have expressly provided that a mortgage transfers no title, notwithstanding an agreement to the contrary. The lien of a mortgage is special, etc. (Idaho Rev. Stats., sec. 3352.) Contracts of mortgage are subject to the provisions of title 12, chapter 1 of the Revised Statutes of Idaho. (Idaho Rev. Stats., sec. 3330.) A mortgage is a lien. (Idaho Rev. Stats., sec. 3355.) Notwithstanding an agreement to the contrary, a lien, or contract for a lien, transfers no title to the property subject to the lien. (Idaho Rev. Stats., sec. 3333.) In the event the mortgagee of chattels takes possession thereof under the

mortgage, but does not sell, he is liable to the mortgagor as for a conversion. (*Howery v. Hoover*, 97 Iowa, 581, 66 N. W. 772; *Miller v. McElwain*, 52 Kan. 91, 34 Pac. 396.) We further contend that under the laws of those states in which the chattel mortgage is only security, and does not transfer the title, as in Idaho, that the mortgagor of chattels is the legal and equitable owner thereof, both before and after a default, and is entitled to the possession thereof, and that this right to the thing, and ownership of the thing, remains in the mortgagor until after he has been foreclosed thereof in the manner provided by statute. (*Sanford v. Duluth etc. Elevator Co.*, 2 N. Dak. 6, 48 N. W. 434; *Everett v. Buchanan*, 2 Dak. 249, 6 N. W. 439, 8 N. W. 31.) The note of August 11, 1894, by Willows to Rosenstien, was not given for a debt of Willows, but for a debt of the firm of Willows & Hedrick. It was afterward included in the $652 note given by the firm; and was again put into and formed part of the $1,215 note executed by the firm. The said last note was thereafter paid, thus paying the $341.97 note. (*Everett v. Buchanan*, 2 Dak. 249, 6 N. W. 439, 8 N. W. 31; *Hartman v. Ringgenberg*, 119 Ind. 72, 21 N. E. 465; Idaho Rev. Stats., sec. 3332.)

HUSTON, J.—This is an appeal from judgment and from order denying motion for a new trial. On August 11, 1894, the plaintiff and one Hedrick, then being partners, engaged in farming in Nez Perces county, state of Idaho, were indebted to the defendant in the sum of $341.97. To secure said indebtedness, the plaintiff executed and delivered to the defendant on said date his individual note for said sum; and also, as security for the payment of said note and the interest thereon, executed and delivered to said defendant a chattel mortgage upon the crop of wheat to be sown and grown during the season of 1895 upon a tract of land then in the possession and occupancy of said plaintiff in said Nez Perces county, and which was at the time the individual property of said plaintiff. In the spring of 1895, plaintiff and his said partner, Hedrick, having secured a lease of certain lands upon the Nez Perces Indian reservation with intent to crop the same for that season, and desiring the pecuniary aid of defendant in carrying out such arrangement, on the 6th of March, 1895, jointly executed and

delivered to the defendant their note for the sum of $652.03, in which sum was included the said sum of $341.97, for which plaintiff had theretofore, on the eleventh day of August, 1894, given his note and mortgage as above stated.  Other complications having arisen which called for further advances, and further security on the part of the defendant, for the benefit of the plaintiff and his said partner, Hedrick, on the thirteenth day of May, 1895, plaintiff and his said partner, Hedrick, executed and delivered to the defendant their note for the sum of $1,215, and to secure the same executed and delivered to defendant on the same date a chattel mortgage upon the crop to be sown and grown on said land on the reservation for the season of 1895.  This last-mentioned note and mortgage included the amount due on the note of March 6, 1895, which latter included the first note and mortgage given by plaintiff for the sum of $341.97, and certain other items of indebtedness due from plaintiff and his said partner to the defendant.  It was agreed between plaintiff and defendant that upon the putting in of the crop on the reservation by plaintiff and his said partner, Hedrick, the defendant would cancel and deliver up to plaintiff his said note and mortgage executed and delivered by plaintiff to defendant on the eleventh day of August, 1894, the same having been included in the note and mortgage for $1,215 given by plaintiff and his partner, Hedrick, May 13, 1895, and defendant gave to the plaintiff his written agreement to that effect.  Subsequently, however, it seems there was a small indebtedness due from the plaintiff to the defendant, amounting to some seventeen dollars, and, as plaintiff desired some further credit for merchandise during the season, it was agreed between him and the defendant that the latter should hold the note and mortgage for $341.97 as security for such indebtedness and future advances.  It seems from the record that there was due from the plaintiff to the defendant at the time the crop on the plaintiff's individual land was put up, and which crop was covered by the said mortgage for $341.97 from the plaintiff to defendant, the sum of $201.99; but in this amount is included a bill of $133.20 for threshing, which defendant had charged to the firm of Willows & Hedrick, so that there was only due from plaintiff to the defendant, upon the agreement between them that the mortgage of August 11, 1894,

should be held for the individual indebtedness of plaintiff to defendant, accrued and accruing, the sum of sixty-eight dollars and seventy-nine cents. In October, 1895, and prior to the alleged taking and conversion by the defendant of the wheat in question, the plaintiff had delivered to the defendant one hundred and eighty-five sacks of wheat, of the value of $137.90. On the eleventh day of October, 1895, while the plaintiff was attending the district court at Moscow, the defendant took possession of and converted to his own use the entire crop of wheat on said ranch of plaintiff, being about two thousand bushels. It is claimed by plaintiff that the taking and conversion of the wheat by the defendant was unlawful and malicious, for the reason that at the time of the taking the mortgage under and by virtue of which the defendant acted and seeks to justify was fully paid. The taking of new or additional security for the same debt does not always operate as a release or cancellation of the original security. "A new mortgage and note are payment of the old security when such is the agreement or understanding of the parties." (Jones on Mortgages, sec. 645; *Brown v. Dunckel,* 46 Mich. 29, 8 N. W. 537; 2 Jones on Mortgages, sec. 926.) Defendant agreed, as above stated, to surrender the original note and mortgage to plaintiff when plaintiff and his partner should have put in the crop on the land on the Indian reservation. This would seem to indicate an understanding on the part of both the plaintiff and defendant that the including of the amount of the first mortgage in that given by the plaintiff and his partner for the sum of $652 on the 6th of March, 1895, and also in that given by the same parties to defendant for the sum of $1,215 on the 13th of May following, should not operate as an extinguishment of the first mortgage. But the mortgage of the 13th of May for $1,215, and which included the first mortgage, was paid, as testified to by Rabold, the bookkeeper of defendant. "Payment of the debt, by whomsoever made, discharges the lien of the mortgage held as security for it, and the holder of such security has afterward no authority to transfer the security." (Jones on Mortgages, sec. 646, and cases cited.) We think the payment of the $1,215 mortgage paid the first mortgage, which was included therein, unless the first mortgage was kept alive or continued by the agreement between plaintiff and defendant

that the latter should continue to hold the same as security for the seventeen dollars owing to defendant by plaintiff and future advances in merchandise to be made by defendant to plaintiff. The facts in this case as presented by the record involve a legal proposition, in the solution of which we have not been able to find much assistance from decisions attributable doubtless to the fact that similar circumstances have not arisen. We think it may justly be concluded from the weight of authority, that a prior mortgage is not canceled or released by the giving of a new mortgage for the same indebtedness, unless there is an agreement between the parties that it shall so be. The first mortgage in this case was fully paid by the payment of the $1,215 mortgage, in which this first mortgage was included. This would seem to be conclusive, and would be so, but for the agreement between the plaintiff and defendant, that said first mortgage should be held by the defendant as security for an already existing indebtedness of plaintiff to defendant, and such indebtedness as might afterward accrue. It might be questionable whether such manipulation of securities could be recognized were the rights of third parties to intervene, and even between the parties themselves we think the question is not entirely clear. But giving the defendant the benefit of all doubts, what is his position? He held the first mortgage as a security, for the individual indebtedness of the plaintiff and nothing more. Now, as is clearly shown by the record, at the time of the alleged taking and conversion of the wheat in question, there was nothing due or owing from the plaintiff to the defendant, for which the said first mortgage could be considered as security, although perhaps the firm of Willows and Hedrick might, and perhaps were at that time indebted to defendant. And we think "therein lies the heart of the mystery" of this whole matter. The defendant was seeking to hold the property of Willows, for a debt due from the firm, through and by virtue of an individual mortgage of Willows.

While, of course, the property of each member of a firm is liable for all the debts of the firm, its subjection to such purpose must be reached in the methods prescribed by law. "In at the window, or else o'er the hatch," will not answer. If the firm of Willows and Hedrick were indebted to defendant, the defendant must seek recovery through means provided by law.

There is still another view of this case arising upon the provisions of our Revised Statutes which would seem to negative the defendant's claim under the mortgage of August 11, 1894. Section 3351 of the Revised Statutes provides that "a mortgage can be created, renewed or extended only by writing, executed with the formalities required in the case of a grant or conveyance of real property," and this applies to all mortgages, whether real or chattel.

It would seem conclusive that any verbal agreement between the plaintiff and defendant that the mortgage which had been included first in the mortgage of March 6, 1895, for $652, and then in the mortgage of $1,215, given May 13, 1895, and which latter mortgage was subsequently paid in full, should be held by the defendant as security for future advances, was in contravention of this provision of the statutes. The judgment and order of the district court is affirmed, with costs.

Sullivan, C. J., and Quarles, J., concur.