Bissell, P. J.
The right of the petitioners to demand payment of the dividends on the amount of their claim as filed against the assigned estates, must he measured by the terms of the written offer of the assignee and its acceptance by the petitioners. There is no other basis for the determination. The record contains no evidence which throws lawful light on the subject, save possibly what little may be found in the application of the assignee for permission to negotiate with the owners of the claim. This in no manner aids in the interpretation of the -written instruments. It enables us, however, to suggest a little more perspicuously the circumstances of the negotiations and what led up to the transaction. It is used only for that purpose and is in no manner a basis on which to rest our conclusion, nor does it in any wise affect the determination of the issue.
This is not a case which calls for the application of the rule ordinarily used in the computation of dividends for the purpose of distributing the assets of insolvent assigned estates where the claimant is the holder of collateral security. That rule was discussed in this court in Erle v. Sullivan, 8 Colo. App. 1, and in the supreme court in Erle v. Lane, 22 Colo. 278. It was wholly irrelevant except for the purposes of illustration. I thought then, as I think now, that the same rule ought to be applied, whether the estate is in the possession of an assignee by voluntary appointment or by legal succession. But such is not the law in Colorado. The opinion in the 22d Colorado seems to concede that in a case of voluntary assignment the authorities, at least the current and weight of them, hold the creditor may receive dividends on the amount of his claim as filed unaffected by his subsequent disposition of collaterals to the point of complete satisfaction. This doctrine is approved by this court as now constituted, notwithstanding the declarations of the principal opinion in Erie v. Sullivan. In this opinion we are supported by a late case in the supreme court of the United States, Merrill v. The *18 National Bank of Jacksonville, 19 Sup. Ct. Rep. 360. To voluntary assignments, such as are involved here, this doctrine will doubtless prevail in this jurisdiction, for while the supreme court is by no means irrevocably committed to it by any express adjudications, its declarations are in harmony with it and would doubtless be embodied in an affirmative opinion should the question be directly presented. This rule is seriously and earnestly pressed on our attention as applicable to the present situation. The various cases in which the principle has been invoked have been cited and counsel contend that it is their legal right to apply the moneys which they received to the payment, first, of the interest, next to the liquidation of their principal claim, and since the adjustment was subsequent to the time the claim was filed they are entitled to insist that the assignee shall as to all subsequent dividends, regard them as holding a claim against the estate, compute their share upon the claim as filed regardless of what they may have realized from this transaction. We concede the law to be as they contend and if we believed the facts justified it, and the circumstances warranted, would apply it. We do not so believe. The present is not a case, as the facts are exhibited by the record, where the creditor holding collaterals filed his claim against the estate, and subsequently disposed of these collaterals to third parties, reaping by the sale funds properly applicable to the liquidation of his debt. We should be quite ready to concede, had Hendrie Brothers & Bolthoff sold this stock to Evans or to anybody else for 144,166.31, their claim against the estates would stand as filed, dividends would be computable on its entirety until the moneys they had thus received from the sale of the collaterals, plus the dividends paid by the assignee, should equal the entirety of their claim and interest. This is the rule which the major portion of the courts have adopted and to which we unhesitatingly subscribe. The petitioners make no case for its application. They did not sell the collaterals to third parties. They did not hold the collaterals and the note against the estate. As the facts are exhibited by the pe *19 tition they have no claim against the estate. The transaction was with the assignee. That officer made them a direct written proposition to pay them the sum of $44,166.31 for the surrender of the note and the collateral. Those were the terms of the offer. Those- were its only terms. The assignee made no attempt to pay them $44,166.31 as a dividend. As we understand it, the estate never paid a dividend to that extent which is one hundred cents on the dollar. We are not exactly advised by the record, but there is nothing in it to indicate to us that the combined estates ever paid fifty cents on the dollar. The case then does not present a situation wherein the assignee is paying dividends to the creditors who have filed claims, who are still insisting that they have a right to apply the proceeds at their pleasure. At the time of this payment there was no dividend declared, none to be paid, no funds in the hands of the assignee to pay it, nor was he attempting to pay any dividend to the claimant. It was, according to the paper, a direct and naked proposition to pay them the total amount of their claim for the note and 'collateral. The payment was to be made on condition that the note and collateral should be surrendered to the assignee. This proposition was accepted in specific terms and in writing. It is recited that the claimants have received of Graham as assignee the full sum of $44,166.31, being the amount in full of a promissory note held by them against the assigned estates, and recites the turning over of the note and stock to the assignee. The proposition and the acceptance shows that the assignee offered the claimants one hundred per cent more than the estate would have paid as a dividend for the surrender of the note and the stock. The proposition was accepted. It was neither in law nor in equity a redemption in the specific sense. If it amounts to anything, it amounts to a purchase by the assignee of that note and that stock for a specific sum for the betterment of the estate. We think the legal effect of it is a sale to the assignee by Hendrie Brothers & Bolthoff of the note and all interest in the collateral, and the consideration was the payment of the sum *20 total of their claim. Brown v. Dunckel, 46 Mich. 29. We are quite unable to admit the case presents the circumstances of a partial payment and a receipt for the sum total which never concludes the creditor. The transaction on its face and under all the circumstances was simply a negotiation with the assignee for the sale and surrender of those certificates of stock and the note, for a definite consideration which was then paid. As we conceive, it makes no difference to those petitioners where the assignee got the money. He may have gotten it from Evans or from anybody else. The offer came from him to them to surrender the note and the stock for so much money, a proposition which amounted to a compromise and sale of their claim for a cash consideration largely more than could have been realized under any other circumstances. The estates would never have paid that amount of money nor would the estates plus the stock have ever paid that amount of money up to the present time but for the controversy between the two parties in the tramway corporation which led to a bidding for the stock to a point largely beyond any at which it had theretofore or has since sold.
The parties complain very much in their petition and insist in their argument on the force of the circumstances surrounding the transaction. It is insisted the assignee stated to Hendrie Brothers & Bolthoff, if they failed to take this amount of money and surrender their note and stock, they would be held liable for the difference between the actual worth of the stock and what they were then offered for it, he insisting as a matter of law they would be liable for the difference. We do not see the force of these suggestions. It is an ancient maxim that ignorance of the law excuses no act, and we do not well see how a statement of what the law is, even when it is probably accurate as it was in this case, can be used as a lever to pry open a transaction which has been practically concluded between parties. We cannot concede the parties were misled by the statement, nor do we discover anything in what the assignee said which would not be regarded as sound legal advice if it had been offered by an indifferent party.
*21 We think the parties have been exceedingly fortunate concerning the payment of their debt and so much of their interest. We do not believe they are entitled to anything further from the estate, and when they sold their certificate and surrendered the note to the assignee, they lost all claim against the estate and there is nothing whereon to prove up and they had nothing left whereon to apply the moneys which they received on the surrender. So far as we are able to judge, it was a fair, equitable compromise and sale, the parties are concluded by the terms of the instruments which they executed and by the facts of the transaction, and we know of no rule or principle of law which would justify the granting of the prayer of their petition.
The judgment of the district court denying it will therefore be affirmed.

Affirmed.